**FILED**

APR 1 9 2013

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF COLUMBIA

Case: 1:13-cv-00572
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 4/19/2013
Description: General Civil (Other)

TERRY WALTER CONANT,
EX REL.
Private Attorney General,

v.

WELLS FARGO BANK, N.A.,
A/K/A WACHOVIA MORTGAGE,
A DIVISION OF WELLS FARGO BANK, N.A.
AND F/K/A WACHOVIA MORTGAGE, FSB
Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP,
NDEX WEST, LLC
SHERIFF-CORONER JOHN D. AGOSTINI in his capacity as
SHERIFF ELDORADO COUNTY CALIFORNIA
and DOES 1 through 20,
inclusive,
          Defendants

TRIAL BY JURY
DEMANDED

Hearing in Chambers

RECEIVED
Mail Room

APR 1 9 2013

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

**PETITION FOR DECLARATORY AND INJUNCTIVE RELIEF
PURSUANT TO TITLE 28, US CODE SECTION 2201, 2202**

**Jurisdictional Statement**

1. This court has jurisdiction to hear this case because: (1.) this court issued a prior

ruling in the United States v. BANK OF AMERICA, NA et al, case number 12 0361,

ordering the Defendants WELLS FARGO BANK, NA and their agents to refrain from

Complaint For Damages Page 1

1

1    engaging in certain unlawful and unethical activities, which they are continuing, thus the

2    consent decree is being violated by the named defendants, (2.) the Plaintiff is a

3    homeowner, whose rights have been set aside by certain court actions that should have

4    been curtailed by the consent decree, but these actions continue; (3.) the Plaintiff is a

5    private attorney general, pursuant to the sections of Title 18 authorizing the Plaintiff to

6    act; (4.) the Plaintiff is appearing Ex Relatione, see Pennsylvania v. Bridge Co, 13 How.

7    (U.S.) 518, 14 L.Ed. 249; Georgetown v. Canal Co., 12 Pet (U.S.) 91, 9 L.Ed. 1012, in

8    relation to the matter of UNITED STATES V. BANK OF AMERICA BANK, NA, et al.

9    The Defendants; Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, NDEX

10   WEST, LLC, John D. Agostini in his official and private capacity, serving as the Sheriff

11   of Eldorado County California, is acting as agents for and on behalf of WELLS FARGO

12   BANK, NA, since they do not have possession of the note, by failing and refusing to

13   answer our Qualified Written Requests, see **Exhibit A,** This failure to answer the

14   Qualified Written Requests, hereinafter, QWRs, makes it a mystery as to who is the

15   actual note-holder and thus, who is the real party-in-interest. All Defendants are acting in

16   absolute defiance of the Court order issued in April 2012 resulting from UNITED

17   STATES V. BANK OF AMERICA BANK, NA, et al., ordering WELLS FARGO

18   BANK, NA CASE 12 0361 to refrain from foreclosing on homeowners property when

19   they do not have a documented property interest in the note and mortgage or deed of trust,

20   see US v. BANK OF AMERICA, NA ET AL, CASE 12 0361, EXHIBIT A, SECTION I

21   (C.). This court has jurisdiction over its own prior court orders and under the Long Arm

22   Statute for Washington, DC, which gives the District Court jurisdiction over those who

23   do business in the District of Columbia or enter into a contract for services in

24   Washington, DC. WELLS FARGO BANK, NA entered into a contract in

25   WASHINGTON, DC and did business in Washington, DC when they entered into the

26   Consent Agreement discussed above. WELLS FARGO BANK, NA has directed the

27

28

1    actions and conduct of all other defendants either directly or by and through proxies to

2    foreclose for WELLS FARGO BANK, NA.

3

4                         **Issues and Statement of the Case:**

5    **2. Defendants, including John D. Agostini should know that the actions to be taken**

6    **by them are prohibited by the consent decree mentioned above.  WELLS FARGO**

7    **BANK, NA is directing the activities of the other defendants, knowing that they are**

8    **taking actions in direct defiance of the consent decree, and knowing the law and**

9    **knowing the legal requirements for banks who are foreclosing on people's homes**

10   **and knowing that they have used robo-signers and knowing that the San Francisco**

11   **County Recorder issued a report in which he stated that the banks have turned the**

12   **county recorder's office into a crime scene and that the lenders and their loan**

13   **servicers and trustees are violating the law 84 percent of the time, and knowing that**

14   **the elected Sheriff in Detroit and Chicago have refused to enforce evictions resulting**

15   **from foreclosure in their respective counties because of the widely publicized**

16   **deficiencies and defects and robo-signing that has been employed in the foreclosure**

17

18   **process, the Defendants have taken the actions complained of in this civil action.** We

19   are invoking common law in this matter pursuant to Article Three, Section Two of the US

20   Constitution, see <u>Callan v. Wilson</u>, 127 U.S. 540, (1888) <u>"And as the guaranty of a trial</u>

21   <u>by jury, in the third article, implied a trial in that mode, **and according to the settled**</u>

22   <u>**rules of common law**"</u>. See also Commentaries on the Constitution by Joseph Story,

23   Volume III, Pages 506-507.

24

25

26

27

28

1   3. The Deed of Trust is void for the failure of the notary to witness the signature of the

2   borrower, see **Exhibit B**. The Deed of Trust was signed on August 16, 2007, as can be

3   seen on page 1 of the Deed of Trust, but the deed of trust was notarized on August 17,

4   2007, one day after the borrower signed his name to the Deed of Trust, see the last page

5   of the Deed of Trust. The notary did not witness the signature and, therefore did not

6   acknowledge the document. In California a notary must witness the signing of the

7   notarized document pursuant to California Civil Code Section 1185 and this was not

8   done.

9

10

11  4. In Garton v. Title Insurance and Trust Company, 106 Cal.App.3d 365 (1980), the

12  California Court of Appeals stated that a notary must witness the signature and properly

13  acknowledge the signature otherwise the improper notarization does not supply the

14  guarantee of the genuineness of the instrument.  "Defendants contend that there can be no

15  liability for the false acknowledgment since plaintiffs conceded that the signatures on the

16  deed of trust are their signatures. We disagree. Civil Code section 1185 provides that a

17  notary must not take an acknowledgment of an instrument unless he knows, or has

18  satisfactory evidence, that the "person making such acknowledgment is the individual

19  who is described in and who executed the instrument; ..." This requirement makes the

20  certificate upon personal knowledge a guaranty of the genuineness of the instrument.

21  (Anderson v. Aronsohn (1919) 181 Cal. 294, 297 [184 P. 12]; Joost v. Craig (1901) [131

22  Cal. 504, 509].) The deed of trust which was acknowledged and recorded *was not the*

23  *deed of trust which was executed by plaintiffs.*"  Garton v. Title Insurance and Trust

24  Company, 106 Cal.App.3d 365 (1980) 165 Cal. Rptr. 449. See Also Berndt v. March

25  Fong Eu, 100 Cal.App.3d 511, 161 Cal. Rptr. 58 (1979).

26

27

28

Complaint For Damages Page 4

1    In addition, the substitution of the Trustee is void and without force and effect in law

2    because it was signed by WELLS FARGO BANK, NA, without a chain of title for the

3    note and Deed of Trust. As a result, WELLS FARGO BANK, NA, has no standing to

4    sign a Substitution of Trustee for this Deed of Trust. I have received evidence that the

5    original lender, WORLD SAVINGS, FSB, sold all of their notes to other banks at the

6    time that the loan documents in the case at bar were signed, see **Exhibit C.** Based upon

7    the foregoing exhibit, and the use of a rubber stamp for an endorsement pre-printed with

8    THE BANK OF NEW YORK identified as the assignee, it appears that WORLD

9    SAVINGS BANK, FSB sold all of their notes to THE BANK OF NEW YORK.  **THE**

10   **PROMISSORY NOTE HAS NEVER BEEN RECORDED AND HAS NEVER**

11   **BEEN PORTRAYED.  THE NOTE DOES NOT EXIST OR IT HAS BEEN SOLD**

12   **TO THE BANK OF NEW YORK OR UNKNOWN THIRD PARTIES AND**

13   **SECURITIZED.**  Consequently, the Notice of Sale, see **Exhibit D.** issued by the alleged

14   substituted Trustee is void, because the alleged beneficiary, WELLS FARGO BANK,

15   NA, has never had standing to Substitute the Trustee, therefore, the alleged Substituted

16   Trustee has no powers to schedule a foreclosure sale date.

17

18   5. The Defendants, all of them have deliberately and with malice raced at break neck

19   speed towards foreclosure and eviction of the Plaintiff from his home in absolute defiance

20   of several provisions of the CONSENT DECREE signed by Judge Rosemary M. Collyer,

21   CASE 12 0361 and have acted as if they have powers to enforce the note even though

22   they have not proven their ownership interest in the note and have not proven their

23   possession of the original note. The original note was executed by the Plaintiffs with

24   WORLD SAVINGS FSB and WELLS FARGO BANK, NA has now appeared claiming

1   pending foreclosure sale and the pending subsequent eviction in order to avoid the

2   consequences of the consent decree.

3

4   6. WELLS FARGO BANK, NA as Claimant participated in contract and commercial

5   activity in respect to a Non-Negotiable Instrument Note, which is attached to a bond,

6   which is expressly governed by Federal law and the Uniform Commercial Code which are

7   uniform statutory laws of all of the United States of America including the District of

8   Columbia and all fifty states. Plaintiff makes the claim that the instrument/obligation

9   became voidable when the Defendants participated in fraudulent and illegal activity,

10  violating the rules of the laws under which the note/instrument bond is expressly

11  governed.

12

13  7. Furthermore, the Defendant, BANK OF AMERICA, NA, et al CASE 12 0361 never

14  brought forward evidence that they provided the proper notification regarding any alleged

15  assignment of the note or specifically what rights were assigned, which is required under

16  Uniform Commercial Code, see Kirby v. Palos Verdes Escrow Company, 183 Cal App.

17  3d 57, at 227 (Calif. Court of Appeal First, 1986). Also there was no evidence advanced

18  that either WELLS FARGO BANK, NA or THE BANK OF NEW YORK as alleged

19  trustee of a REMIC was/is in possession of the note or security instrument, a requirement

20  for enforcement, see Matter of Staff Mortg. & Inv., 550 F 2d 1228 (Ninth Circuit, 1977),

21  also cited in Kirby, Supra. Finally, the right of subrogation does not exist for a stranger to

22  the transaction. It appears that WELLS FARGO BANK, NA, is a stranger and does not

23  have the right of subrogation as a stranger.

24

25

26

27

28

8. WELLS FARGO, NA, in the California Superior Court foreclosure civil action filed by the Plaintiff (subsequently dismissed voluntarily by Plaintiff) did not meet their burden under state law or the common law to prove it has the power of sale and the power to act to enforce the note and mortgage and establish that their alleged interest in the note and mortgage was "duly perfected". The Defendants must prove the sale will be conducted in compliance with the above cited law and the terms of the mortgage followed by a purchase and the Plaintiff can raise objections on that phase on the issue of title, see Cheney v. Trauzettel, 9 Cal 2d 158, at 159-160 (1937). In a foreclosure, Title is duly perfected when all steps have been taken to make it perfect, that is to convey to purchaser that which he has purchased is valid an good beyond all reasonable doubt, and when the foreclosing party has standing and capacity. The filing of the foreclosure action against the Defendants by Plaintiff is a violation of the consent decree pursuant to the Consent Decree at Exhibit A, CASE 12 0361 Sections 1-A-1 and 1-C. Exhibit A of said consent decree states as follows:

Section 1A-1

..........................and notices of default, notices of sale and similar notices submitted by or on behalf of Servicer in non-judicial foreclosures are accurate and complete and are supported by competent and reliable evidence. Before a loan is referred to non-judicial foreclosure, Servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.
2. Servicer shall ensure that affidavits, sworn statements, and Declarations are based on personal knowledge, which may be based on the affiant's review of Servicer's books and records, in accordance with the evidentiary requirements of applicable state or federal law.

In addition, Subsection C states a requirement to provide a chain of title

for the note as follows:

> 1. **Servicer shall implement processes to ensure that Servicer or the foreclosing entity has a documented enforceable interest in the promissory note and mortgage (or deed of trust) under applicable state law, or is otherwise a proper party to the foreclosure action.**
> 2. **Servicer shall include a statement in a pleading, affidavit of indebtedness or similar affidavits in court foreclosure proceedings setting forth the basis for asserting that the foreclosing party has the right to foreclose.**
> 3. Servicer shall set forth the information establishing the party's right to foreclose as set forth in I.C.2 in a communication to be sent to the borrower as indicated in I.A.18.
> 4. **If the original note is lost or otherwise unavailable, Servicer shall comply with applicable law in an attempt to establish ownership of the note and the right to enforcement.** Servicer shall ensure good faith efforts to obtain or locate a note lost while in the possession of Servicer or Servicer's agent and shall ensure that Servicer and Servicer's agents who are expected to have possession of notes or assignments of mortgage on behalf of Servicer adopt procedures that are designed to provide assurance that the Servicer or Servicer's agent would locate a note or assignment of mortgage if it is in the possession or control of the Servicer or Servicer's agent, as the case may be. In the event that Servicer prepares or causes to be prepared a lost note or lost assignment affidavit with respect to an original note or assignment lost while in Servicer's control, Servicer shall use good faith efforts to obtain or locate the note or assignment in accordance with its procedures. In the affidavit, sworn statement or other filing documenting the lost note or assignment, Servicer shall recite that Servicer has made a good faith effort in accordance with its procedures for locating the lost note or assignment. (Emphasis Added.)

9. The Servicer and their agents and principals have not documented their enforceable

interest in the note as required in the sections of the Consent Decree cited above. The

Defendants WELLS FARGO BANK, NA,  the their previous law firm named, Anglin,

Flewelling, Rasmussen, Campbell & Trytten LLP, as well as the Sheriff, John D.

1    Agostini, who will conduct the Sheriffs auction and other services to administer the sale

2    of the subject property in the foreclosure will violate or have violated the above

3    provisions of law, since they cannot establish their client's property interest in the note,

4    pursuant to UCC 3-203, UCC 3-301, UCC 3-501, UCC 3-305 and UCC 3-201, and 3-309

5    (the procedure used for a lost note). In addition, under common law, the Plaintiff in this

6    matter have a common law right to know that the alleged creditor is an actual creditor and

7    is entitled to enforce the note as a genuine creditor. The amount of confusion and

8    uncertainty about who the note-holder is has been created by the securitization process

9    and by the deliberate obfuscation by the loan servicers and alleged creditors, who do not

10   want the homeowners to know too many of the details of the transactions involving the

11   assignments of the notes and mortgages and the securitization process. The Sheriff, John

12   D. Agostini and the California Superior Court in the dismissed case will have/has acted in

13   a contractor relationship with the other Defendants, setting aside their proper role as a

14   gatekeeper of the foreclosure process to make sure that the Sheriff and the courts do not

15   allow an alleged creditor to file a civil action and foreclose without standing. Probably a

16   case that is most closely analogous to the case at bar is Higgins v. Coyne, 75 Cal App. 2d

17   69 (1946). There the Unlawful Detainer Defendant asserted that the Trustee sale was a

18   legal nullity because inter alia the property had been deeded to her before the sale, as a

19   result the alleged beneficiary had no legal authority to conduct the sale in the first place.

20   The trial court entered judgment for the Plaintiff. The First Appellate District Court of

21   Appeal reversed and stated as follows:

22   To the limited extent of proving deraignment of title in the manner expressly provided for
     I the unlawful detainer statutes, **the question of title not only may but must be**

23   **tried in such actions...** [id. @ p. 72]

24

25

26

27

28

1
2
3

Since Plaintiff contends that the title to his property was deranged therefore incoherent and will be performed through proceedings under a power of sale contained in a deed of trust, under the law laid down in the Hewitt and Cheney Cases, was entitled to challenge the legality of those particular proceedings and to have that limited issue tried and determined in the Justice's court. [Id @ p. 74]

4
5
6
7
8
9

10. Higgins is analogous and similar to the case at bar, since the Defendants challenged the validity and the underlying legal authority to conduct the sale, and challenge the validity of the title. **The Court in Higgins made it clear that a Defendant has the right to raise the issue of title, especially when the person or entity who elected to exercise the power of sale has no documented legal authority to do so.**

10
11
12
13
14
15
16
17
18
19
20
21
22
23

11. When the lender or his agent files an unlawful detainer he must adhere to and strictly follow the statutory procedure, which was not done in this case, see <u>Berry v. The Society of Saint Pius X,</u> (1999) 69 Cal App. 4 th 354, at 363. For the sale of the subject property to be done in accordance with Civil Code § 2924 the "electing beneficiary" must have legal authority from the note and deed of trust, otherwise the foreclosing party is a stranger to the transaction. WORLD SAVINGS FSB is the original lender identified on the note and mortgage, not THE BANK OF NEW YORK or WELLS FARGO BANK, NA. A proper chain of title with the assignments must be established. Furthermore, the loan servicers never answered the Qualified Written Requests I sent them, thereby tacitly by silence and acquiescesense has admitted that WELLS FARGO BANK, NA is not the owner of the note in this matter, see **Exhibit B.**

24
25
26
27

12 Given the tacit admission, that the note is not owned by WELLS FARGO BANK, NA and the recorded assignment of Mortgage in which the alleged holder of the NOTE is

28

WORLD SAVINGS, F.S.B., the Defendants are committing avert acts of fraud. In the Qualified Written Requests, I asked the loan servicer to supply us with the note. Uniform Commercial Code Section 3-501 makes it mandatory for the creditor, making demands for payment to **EXHIBIT THE INSTRUMENT,** see UCC 3-501. This makes the production of the note mandatory. The ownership of the note and mortgage cannot be split. Also the alleged assignment of the Mortgage cannot be relied upon as an authentic assignment of the mortgage, given the failure, by WELLS FARGO BANK, NA to Exhibit The Instrument. This is a tacit admission that the note is **not** held by WELLS FARGO BANK, NA. The question of ownership of the note is a vital part of determining who has the right to foreclose and sell the property. This calls into question the validity of the scheduled trustee's sale and demonstrates that the title is not duly perfected. **In addition, as discussed Defendant NDEx, West, L.L. has issued the pre-foreclosure documents acting as a alleged nominee of the note holder, the Assignment of Mortgage, making said Assignment void ab initio.**

**13. In addition, the note and deed of trust cannot be split, see Carpenter v. Longan, 16 Wall. 271, 83 U.S. 271, 21 L.Ed. 313 (1872). Also, there is no valid endorsement on the evidently non existent note, leaving it a question and mystery regarding who is the actual note holder. A ruling by the California Court of Appeals, Fourth Appellate District, is instructive in this matter, because the court issued a ruling that the endorsement on a note must be on the note itself and not on a separate allonge, unless there is no additional space on the allonge, see Pribus v. Bush, 118 Cal.App.3d 1003; 173 Cal. Rptr. 747(1981).**

The Fourth Appellate District Court Stated as follows:

**The trial court ruled that the Williams' signature on the paper attached to the promissory note did not qualify as an endorsement because there was adequate space for the endorsement on the note itself. We affirm the judgment.**

(Emphasis added.)

14. As a result of the foregoing, the Defendants have not established, with admissible evidence that any of them are the holder of the note and cannot foreclose or instruct the Sheriff to conduct a foreclosure sale, because they are not the beneficiary of the note and mortgage, as discussed above. They have supplied documents in which they have made conflicting statements and evidence about who holds the note and the ownership of the note. With all of the conflicting documents and consequent confusion regarding who the actual note holder is, the attempt by WELLS FARGO BANK, NA to foreclose is void, including the scheduled Sheriff's Sale, making the foreclosure case void ab initio. All of the documents recorded and filed prior to during and after the foreclosure violated the terms **of the Mortgage, because only the current beneficiary can foreclose and there is ample evidence from the record that the foreclosure documents that have been recorded or are filed by a stranger to the transaction and cannot be relied upon to support the Sheriff's Sale of the subject property.** There is a broken chain of title to the note, from the original lender to the alleged current creditor, WELLS FARGO, BANK, NA. There is no evidence brought before any court that title was duly perfected as required under the Sections of the UCC cited above. As a result of the foregoing, the title is not duly perfected, the Defendants do not have good and perfected title and the foreclosure sale if held will be invalid and void, meaning that the Superior Court in California has/had no jurisdiction to hear the foreclosure case.

1

2    15. WELLS FARGO BANK, NA and allegedly THE BANK OF NEW YORK are not the

3    original lender and have not met any of the requirements of the above sections of

4    Uniform Commercial Code, and several important requirements placed upon creditors by

5    the UCC. As a result, WELLS FARGO BANK, NA and THE BANK OF NEW YORK

6    are strangers to the transaction and they have absolutely no property interest in the note

7

8    and mortgage. I asked WELLS FARGO BANK, NA, the loan servicer, in writing for the

9    note with endorsements as required under Uniform Commercial Code Section 3-501 and

10    they failed to respond, proving that they are not in possession of the note. UCC 3-501

11    requires the alleged creditor to **EXHIBIT THE INSTRUMENT** when asked as a

12    requirement written into Section 3-501 of the UCC, see **Exhibit A**. WELLS FARGO

13    BANK, NA illegally repudiated Plaintiff's foreclosure civil case to obtain ownership and

14    control of his home. The scheduled foreclosure sale EXHIBIT D. is

15    subsequently an eviction case against Plaintiff, designed to obtain control and possession

16    of the subject property and is the last part of the debt collection process and is integrated

17

18    with the non-judicial foreclosure.

19    <u>Parties/ Plaintiff</u>

20    16. I, Terry Walter Conant, is the Plaintiff, and I am a private inhabitant living in California in

21    the subject property who will be evicted from my home if we are not successful in achieving a

22    court order of cease and desist in this case.

23

24

25    <u>Parties/ The Defendants</u>

26    17. WELLS FARGO BANK, NA is named as a defendant because They exercised

27

28

1   powers that they do not have and have taken actions in conjunction with local

2   government agencies such as the local courts and the sheriff to deprive me of our private

3   property in violation of the consent decree discussed above. WELLS FARGO BANK,

4   NA is named as a Defendant because they have identified themselves as the rightful

5   owner of the invalid Deed of Trust **Exhibit B.**   WELLS FARGO BANK, NA has and is

6   directing the illegal activities and driving the foreclosure process in violation of the

7   Consent Decree and will be receiving the proceeds of the sale of the subject property in

8   the foreclosure sale. WELLS FARGO BANK, NA would not have    defended the CA

9   Superior Court Case in such a manner while the final foreclosure  was pending if they did

10  not have a alleged continuing interest in the outcome of the civil case. It appears that THE

11  BANK OF NEW YORK is allegedly functioning as a straw man or alter-ego for WELLS

12  FARGO BANK, NA. It is also obvious that the identity of the note holder and the real

13  party-in-interest is a question and a mystery that the Defendants are trying to keep well

14  hidden. WELLS FARGO BANK NA is named as a Defendant because they are clearly

15  not the real-party-in-interest and they are clearly not a party who is entitled to enforce the

16  note and they are acting in a illegal role in their efforts to foreclose on the subject

17  property as.  Violations of the consent decree occurred, in this context, when THE BANK

18  OF NEW YORK allegedly acted in league with the other Defendants including their

19  attorneys and THE SUPERIOR COURT OF CALIFORNIA IN AND FOR THE

20  COUNTY OF ELDORADO while acting as an agent for WELLS FARGO BANK, NA.

21  WELLS FARGO BANK, NA participated and assisted in and is directing the foreclosure

22  pending on my property and then they will attempt to seize the subject property through

23  an eviction, even though they have no standing to do so, since the note was probably sold

24  to an undisclosed third-party, and was never brought forward by the alleged creditor,

25

26

27

28

1   allegedly THE BANK OF NEW YORK when they were asked to do so in violation of

2   UCC 3-501, and under the sections of the UCC cited above, neither the mortgage-backed-

3   security nor WELLS FARGO BANK, NA nor THE BANK OF NEW YORK can

4   foreclose without possession of the note and meeting all of the requirements under UCC

5   3-301. ANGLIN, FLEWELLING, RASMUSSEN, CAMBELL & TRYTTEN LLP is

6   named as a Defendant because of their key role in assisting the other Defendants by

7   filings the CA foreclosure case initiated by Plaintiff and by preparing flawed and

8   fraudulent documents. Defendants WELLS FARGO BANK, NA by allegedly buying the

9   
10  subject property from THE BANK OF NEW YORK, a bank that has no standing and

11  capacity to sell the subject property as a stranger to the transaction and as a party that

12  does not hold the note and mortgage and does not have the right to enforce the note

13  pursuant to UCC 3-301.

14  

15  
16      18. It appears that the notes are held by a mortgage-backed-security or some other

17  financial institution, although it is impossible to determine who is the actual holder of the

18  note, based upon the present circumstances whereby the Defendants and their clients and

19  principals have engaged in deliberate fraudulent concealment. THE BANK OF NEW

20  YORK was allegedly assigned the note and mortgage. As discussed above there are other

21  good reasons why the Assignment of Mortgage is invalid and void. Please review the

22  following for affirmation that the right of subrogation does not exist for the Defendants;

23  Henningsen  v. United States Fidelity & G. Co.; 208 US 404; 52 L. Ed 547, 28 S. Ct. 389;

24  
25  Prairie State National Bank v. United States; 164 US 227; 41 L. Ed. 412; 17 S. Ct. 142;

26  Aetna L. Ins. Co. v.  Middleport; 124 US 534; 31 L. Ed. 537; 8 S. Ct. 625; McBride v.

27  McBride; 148 Or 478 36 P 2d 175. ALSO, WELLS FARGO BANK, NA NEVER

28

1   EXHIBITED THE INSTRUMENT AS REQUIRED UNDER UCC 3-501 AND HAVE

2   PROVEN BY THE DOCTRINE OF ESTOPPEL BY SILENCE THAT THEY DO NOT

3   HAVE THE LAWFUL RIGHT TO ENFORCE THE NOTE NOR DO THEY HAVE

4   THE RIGHT TO FORECLOSE. *AS A RESULT, WELLS FARGO BANK NA, HAS NO*

5   *RIGHT, TITLE OR INTEREST IN THE LAND AND HOME, WHICH IS THE SUBJECT*

6   *OF THIS CIVIL ACTION, SINCE THE NOTE HAS BEEN SOLD, AND THE*

7   *UNDISCLOSED THIRD PARTY NOTE BUYER,* (THE "DEPOSITOR"), *DOES NOT*

8   *HAVE THE RIGHT OF SUBROGATION TO THE ORIGINAL NOTE THAT THEY*

9   *ALLEGEDLY PURCHASED AND THAT WAS ALLEGEDLY ASSIGNED TO THEM.*

10  *THEY HAVE NO STANDING TO FORECLOSE ON OUR PROPERTY.* See also 73 Am

11  Jur Second, Section 90 which states that a right of subrogation does not exist for a mere

12  volunteer, or some one who has not paid the entire mortgage debt in full. The law firms

13  named in the CA civil action, Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP

14  are named as Defendants because of their active role in violating the consent decree and

15  because they are attorneys and are required to know the law and to understand the legal

16  requirements found in state law and federal law for foreclosure sale of the subject

17  property and the subsequent eviction.

18

19  ¶9 The law firms and the attorneys are named in this matter because they had a central

20  role through their activities of defending WELLS FARGO BANK NA in the CA civil

21  action, and have assisted them as alleged mortgage creditors; WELLS FARGO BANK,

22  NA in their unlawful activities in this subject illegal foreclosure. **The Circuit Court**

23  **clerk has a gate keeper role with respect to accepting pleadings filed and they and all**

24  **other Defendants cannot claim to not have exposure to radio TV and newspapers,**

**which would allow them to discover that a consent decree has been reached with 49 of the 50 state attorneys general as well as the Attorney General of the United States in the case captioned United States, v. WELLS FARGO BANK, NA, et al.** John D. Agositini, is named as a Defendant in his official and private capacity, serving as the Sheriff in Eldorado County California, and is acting as agents for and on behalf of WELLS FARGO BANK, NA, has tacitly by omission admitted that they do not have possession of the note, by failing and refusing to answer my Qualified Written Request, see **Exhibit A**. John D. Agositini has an active role to play in the foreclosure process, to conduct the sale and to process the final eviction regarding the subject property, thus will have actively participated in the foreclosure process with full knowledge and intent of the consent decree upon service of this pleading and the fact that none of the banks involved have ever supplied evidence of their possession of the note or their right to enforce the note.

*20. WELLS FARGO BANK, NA is named because they are directly and indirectly involved in planning and supervising the activities of the attorneys, and either knew or should have known that their alleged agent THE BANK OF NEW YORK as a result of owning the NOTE does not have a lawful right to foreclose and is not entitled to enforce the note and mortgage, see UCC 3-301, and they have primary management control and responsibility over the activities of their Attorneys. WELLS FARGO BANK, NA is also named because of the active role they played in attempts collecting the debt and preparing pre-foreclosure documents and functioning as a loan servicer,and directing the activities of all other Defendants either directly or indirectly, while they had full knowledge that they are not the actual note holder but the real note-holder is an undisclosed third-party.*

21. The fact that The Mortgage Backed Security or Undisclosed Third Party Note Buyer did not pay the entire mortgage debt in full and is not secondarily liable is unrebutted and is therefore a fact undisputed and agreed to by the Defendants. These Defendants are attempting to deprive me of our right to use and ownership of our land and home, in violation of the consent decree by foreclosing without standing and without providing any evidence of a documented interest in the note and mortgage and without having recorded an Assignment of Mortgage that is signed by the original lender. This was required to be signed by the original lender in violation of a section of Title 26 US Code which places an absolute requirement on a REMIC to ensure that the notes that are assigned to them are assigned within 90 days of the start-up date of the REMIC, which pursuant to Title 26, US Code, Section 860D is about five years too late.

22. **Illinois cases also place an absolute requirement on the creditor that they produce the account and general ledger statement with a competent fact witness as follows: Solon v. Godbole;163 Ill. App. 3d 845, 114 Il. (by example)**

23. **WELLS FARGO BANK, NA and it agents have allowed their agents to foreclose on my home without any admissible evidence that they are the note holders in violation of numerous sections of Uniform Commercial Code, including but not limited to UCC 3-501, and 3-203 and in violation of the consent decree.** As Plaintiff, I, Terry Conant allege that THE BANK OF NEW YORK'S as predecessors-in-interest, WORLD SAVINGS FSB participated in contract and commercial activity in respect to a Negotiable Instrument Note, which is attached to a bond, which is expressly governed by

1 Federal law and the Uniform Commercial Code which are uniform statutory laws of all of

2 the United States of America including the District of Columbia and all fifty states.

3 Plaintiff makes the claim that the instrument/obligation became voidable when the

4 Defendants participated in fraudulent and illegal activity, violating the rules and the laws

5 under which the note/instrument bond is expressly governed and also violated their duty

6 as officers sworn statutorily to act within the parameters of federal banking statutes and

7 other applicable statutes. It is clear, as a result of the facts that have been presented that

8 allegedly THE BANK OF NEW YORK and WELLS FARGO BANK, NA are strangers

9 to the transaction and have no possession of the note and are in violation of that provision

10 of the consent decree that requires WELLS FARGO BANK, NA and their agents and

11 assigns to provide a documented enforceable interest in the promissory note and

12 mortgage, see Section I (C)(1) of Exhibit A of the Consent Decree in US v. WELLS

13 FARGO BANK, NA, ET AL. CASE 12 0361.

14

15

16 24. The Plaintiff does not ask for monetary damages unless the Defendants file an **answer**

17 **or a motion of any kind and if and only if the Defendants and any and all agents**

18 **refrain from evicting the Plaintiffs from their home until this case is settled and**

19 **finally decided and if the case is dismissed by the District Court, that the Appeal to**

20 **the DC Circuit is finally decided**. If, however, the Defendants file an answer and

21 continue with the sale and subsequent eviction in violation of state and federal law, the

22 Plaintiff want damages as describes herein.

23

24

25 25. **THE SIGNER OF THE COURT DOCUMENTS, DOES NOT HAVE FIRST**

26 **HAND KNOWLEDGE OF ANY OF THE DETAILS OF THE LOAN, THE CHAIN**

27

28

1  **OF TITLE OF THE NOTE AND MORTGAGE, THE SIGNER DOES NOT HAVE**

2  **A FIRST HAND WORKING KNOWLEDGE OF THE ACCOUNTING RECORDS**

3  **AND ACCOUNT AND GENERAL LEDGER STATEMENTS OF THE ALLEGED**

4  **CREDITOR OR THE ACTUAL CREDITOR, AND THERE IS NO**

5  **FOUNDATION FOR THE DEFENDANTS ALLEGED EVIDENCE AS**

6  **EVIDENCE IN A COURT OF LAW. THE SIGNER OF THE COURT**

7  **DOUMENTS, SEE EXHIBIT B, IS NOT A COMPETITENT WITNESS AND**

8  **CANNOT TESTIFY AS TO FACTS FOR WHICH SAID SIGNER HAS NO**

9

10  **WORKING KNOWLEDGE.**

11

12  36. The Consent decree, at their Exhibit A, CASE 12 0361 entitled the Settlement Term

13  Sheet, specifically prohibits many of the particular actions taken by the Defendants. The

14  consent decree specifically orders the Defendant and its agents to refrain from submitting

15  court pleadings and other court documents which do not conform to the specific terms

16  and conditions of the consent decree. In particular the consent decree at their Exhibit A,

17  Page a-1, Section A, 1, CASE 12 0361 states that all pleadings and other court documents

18  in foreclosure proceedings must be **accurate and complete and it states that they are**

19

20  **supported by competent and reliable evidence.**, see <u>Solon v. Godbole</u>;163 Ill. App. 3d

21  845, 114 Il.

22

23

24  A. Standards for Documents Used in Foreclosure and Bankruptcy

25  Proceedings.

26  1. **Servicer shall ensure that factual assertions made in pleadings**

27  **(complaint, counterclaim, cross-claim, answer or similar**

28

1      **pleadings), bankruptcy proofs of claim (including any facts**

2      **provided by Servicer or based on information provided by the**

3      **Servicer that are included in any attachment and submitted to**

4      **establish the truth of such facts) ("POC"), Declarations, affidavits,**

5      **and sworn statements filed by or on behalf of Servicer in judicial**

6      **foreclosures or bankruptcy proceedings and notices of default,**

7      **notices of sale and similar notices submitted by or on behalf of**

8      **Servicer in non-judicial foreclosures are accurate and complete and**

9      **are supported by competent and reliable evidence.** Before a loan is

10     referred to non-judicial foreclosure, Servicer shall ensure that it has

11     reviewed competent and reliable evidence to substantiate the

12     borrower's default and the right to foreclose, including the

13     borrower's loan status and loan information.

14

15     27. In addition, the Defendants knew that they do not have possession of the promissory

16     note and have no connection with the subject loan and no property interest in the note and

17

18     mortgage and yet have moved forward with the scheduled sale and subsequent eviction

19     process anyway. The consent decree also makes it mandatory that the Defendant, WELLS

20     FARGO BANK, NA and their agents, such as allegedly THE BANK OF NEW YORK

21     must refrain from foreclosing when they lack a chain of title on the note and mortgage

22     and when there is no valid assignment.

23

24

25     28. The filing of the subsequent eviction in the foreclosure civil process is a continuation

26     of the judicial foreclosure process and is designed and intended to deny us our due

27

28

Complaint For Damages Page 21

1  process rights, the right to be sued by someone who has prudential and Constitutional

2  standing and to force me out of the subject property and deny me the use and possession

3  of the subject property in favor of a party who is a stranger to the transaction. The consent

4  decree makes it mandatory that the Defendant WELLS FARGO BANK, NA and their

5  agents provide a chain of title for the note and supply a documented enforceable interest

6  in the promissory note and mortgage, see Consent Decree, Exhibit A, Section I C, 1.

7  CASE 12 0361. The consent decree also makes it mandatory that the assignments of the

8  
9  mortgage or deed of trust **are executed with appropriate legal authority, accurately**

10  **reflective of the completed transaction and properly acknowledged.**

11  26. Any and all of the recorded or existing documents are designed to give the Defendant

12  WELLS FARGO BANK, NA the power to enforce the note and mortgage are fraudulent

13  or defective or both. One of the most astonishing examples of this is the document

14  entitled "DEED OF TRUST" signed the day after the alleged execution by Plaintiff see

15  **Exhibit B**. It appears that the notary did not establish the validity of the credentials of

16  the signer or is deliberately notarizing a fraudulent document to intentionally mislead

17  
18  those who will rely on this document as a legitimate, honest and accurate statement of the

19  circumstances and status of the signer. The Deed of Trust that was recorded and made a

20  part of the county records in the Eldorado County Recorder's Office appears to violate

21  paragraph 6 of Section I(C) of the Consent Decree, because it lacks the necessary

22  appropriate legal authority.

23  
24  
25  To put it bluntly:

26  **Any attempt to transfer the beneficial interest of a mortgage without ownership of**

27  **the underlying note is void under State and U.S. Federal law.**

28  

Complaint For Damages Page 22

29. WELLS FARGO BANK, NA is clearly not a creditor and is not entitled to receive monthly payments. The Defendant, WELLS FARGO BANK, NA claims to have the power to enforce the original note and to foreclose on the subject property, in spite of the fact that allegedly THE BANK OF NEW YORK and other banks have been securitizing their notes, since at least 2000. Banks have a history of securitizing their notes, since the repeal of the Glass Steagle Act and thus the original lender has securitized this note and neither allegedly THE BANK OF NEW YORK nor WELLS FARGO BANK, NA has standing to foreclose or claim to have a continuing interest in the note, since that was transferred when the original lender sold the note and there is no indorsed note to supply a chain of title for the ownership of the note. Furthermore, numerous requests have been made by us to WELLS FARGO BANK, NA for documentation of their alleged powers to enforce the note and mortgage, including a request to examine the original instrument and to identify the actual note holder, pursuant to UCC 3-501.  Under UCC 3-501, the alleged lender must **"exhibit the instrument"** when requested by the debtor, and that has not been done by the alleged creditor, WELLS FARGO BANK, NA.

30. WELLS FARGO BANK, N.A., The Defendant, and their agents and assigns lack standing to foreclose, because they have failed and refused to bring forward the original note with the endorsements on the back of the note. Federal courts have consistently ruled that banks must be in possession of the original note, see Matter of Staff Mortg. & Inv. Co. 550 F. 2d 1228, (CA 9, 1977); Motobecane America, Ltd. v. Patrick Petroleum Co., 791 F.2d 1248, (CA 6, 1986); In re Maryville Sav. & Loan Corp., 743 F.2d 413, CA 6, 1984); In re Holiday Intervals, Inc., 931 F.2d 500, (CA 8, 1991).  Other Federal Courts

1   have stated that the mortgage creditor must have an endorsement on the note, endorsing

2   the note over to that creditor, see In Re BARRY WEISBAND, 4: 09-bk-05175 EWH,

3   (US Bankruptcy Court, Arizona, 2009); IN RE: LAVERL H. WILHELM, 08-20577-

4   TLM, (US Bankruptcy Court, Idaho, 2009). The Defendant, WELLS FARGO BANK,

5   N.A., is not the real-party-in-interest, pursuant to FRCP Section 17(a), without bringing

6   forward the original note and demonstrating that they are in possession of the note, and as

7   a result, do not have standing to claim to be a creditor with the powers of foreclosure.

8

9

10   31. The Second Circuit Court of Appeals issued a ruling in National Union Fire Insurance

11   Co. Of Pittsburgh, Pa. v. Woodhead 917 F.2d 752 (Second Cir, 1990) and stated as

12   follows: "Section 3-201(1) specifically limits the exception to the shelter principle to one

13   who was a *prior holder* with knowledge of the defense. A holder is "a person who is in

14   possession of ... an instrument ... issued or indorsed to him or to his order or to bearer or

15   in blank." N.Y. U.C.C. § 1-201(20) (McKinney Supp.1990). National Union's guaranty of

16   payment on the note and security interest in the underlying investment did not make it a

17   holder, because it was not in possession of the note before acquiring it from M & T."

18

19

20   32. The Court in IN RE: LAVERL H. WILHELM, supra, stated as follows: **"Before**

21   **delving into the specifics of these cases, it is worth reiterating that changes in**

22   **mortgage practices during the past several years – including, most prominently, the**

23   **serial assignment of mortgage obligations – have complicated the factual situations**

24   **to which the standing analysis applicable to stay relief motions must be applied.** See

25   In re Sheridan, 09.1 I.B.C.R. 24, 24, 2009 WL 631355, at *1 (Bankr. D. Idaho 2009).

26   Several bankruptcy courts – including this Court, in In re Sheridan – have been required

27

28

1    to issue decisions explaining who does (and who does not) have standing to seek stay

2    relief. See, e.g., In re Jacobson, 402 B.R. 359, 365-67 (Bankr. W.D. Wash. 2009); In re

3    Vargas, 396 B.R. 511, 520-21(Bankr. C.D. Cal. 2008); In re Hwang, 396 B.R. 757, 765-

4    69 (Bankr. C.D. Cal.2008); In re Mitchell, 2009 WL 1044368, at *2-6 (Bankr. D. Nev.

5    Mar. 31, 2009). In In re Sheridan, for example, this Court explained that a stay relief

6    motion **"must be brought by one who has a pecuniary interest in the case and, in** 4

7    For ease of reference, the cases are listed in alphabetical order."

8

9

10   **33.** Standing and the real-party-in-interest requirements are related. Standing

11   encompasses both constitutional and prudential elements. See, e.g., Warth v. Seldin, 422

12   U.S. 490, 498-99 (1975); In re Simplot, 2007 WL 2479664, at *9 (Bankr. D. Idaho. Aug.

13   28, 2007). To have constitutional standing, the litigant must allege an "injury that is

14   concrete, particularized, and actual or imminent; fairly traceable to the defendant's

15   challenged behavior; and likely to be redressed by a favorable ruling." Davis v. Fed.

16   Election Comm'n, __U.S. __, 128 S. Ct. 2759, 2768 (2008). Prudential standing includes

17   the idea that the injured party must assert its own claims, rather than another's. See, e.g.,

18

19   Warth, 422 U.S. at 499. Thus, the real-party-in-interest doctrine generally falls within the

20   prudential standing doctrine.

21

22   **34.** The Bankruptcy Court in In Re LAVERL H. WILHELM, supra stated: **"To resolve**

23   **the standing and real-party-in-interest issues presented here, the Court must**

24   **determine who has the right to enforce the notes. Because bankruptcy law does not**

25   **provide for enforcement of promissory notes, the Court looks to applicable non-**

26   **bankruptcy law.** See generally Butner v. United States, 440 U.S. 48, 54-55 (1979)

27

28

1  (nature and extent of property interests in bankruptcy are determined by applicable state

2  law)." The court in the above case also concluded that the mortgage creditors in this case

3  did not have standing to bring a motion for relief from stay because they could not bring

4  forward a note with an endorsement, showing that the note was endorsed in their name.

5  The court stated further:   **"The "holder" option is not available to Movants; none of

6

7  the notes is payable to the Movant and none of the notes has been indorsed, either in

8  blank or specifically to a Movant. See id.; Idaho Code § 28-3-205 (regarding special

9  and blank endorsements)."

10

11  35. The consent decree CASE 12 0361 states in relevant part as follows:

12

13      [on Page A-8]

14      SECTION C Documentation of Note, Holder Status and Chain of Assignment.

15

16      1. Servicer shall implement processes that ensure that servicer or the

17      foreclosing entity has a documented enforceable interest in the

18      promissory note and mortgage (or deed of trust) under applicable

19      state law, or is otherwise a proper party to the foreclosure action.

20      2. Servicer shall include a statement in a pleading, affidavit of

21      indebtedness or similar affidavits in court foreclosure proceedings

22      setting forth the basis for asserting that the foreclosing party has

23      the right to foreclose..........

24

25      6 Servicer shall ensure that mortgage assignments executed by or on

26      behalf of Servicer are executed with appropriate legal authority,

27      accurately reflective of the completed transaction and properly

28

1    **acknowledged.** [Emphasis added.]

2

3    36 The Defendants have violated several important provisions of the consent decree cited

4    above, and must be prevented from continuing their fraudulent misrepresentation. The

5    Defendants have no provided a documented enforceable interest in the note and mortgage

6    and they have not executed the Assignment of Mortgage with the appropriate legal

7    authority. As discussed above UCC 5-501 requires the mortgage creditor to Exhibit the

8    Instrument when asked. They have not done this.

9

10

11   37. Our rights have been violated under the previously cited provisions of law. We ask

12   the court for injunctive relief pursuant to the courts powers to enforce their own prior

13   judgments. The consent decree in the civil action filed against the five largest banks was

14   issued before the current eviction case was final and before a final decision was rendered.

15   The CA civil action filed by me against WELLS FARGO BANK, NA was precedent to

16   the continuation of the unlawful acts taken by WELLS FARGO BANK, NA, wherein

17   WELLS FARGO BANK, NA is attempting to  carry out the final stages of an unlawful

18   foreclosure and has engaged in an act in violation of the consent decree.

19

20

21   38. We therefore ask the court for injunctive relief and other relief as follows:

22

23

24                           FIRST CAUSE OF ACTION

25                                (Injunctive Relief)

26   39 . I, Terry Conant, the Plaintiff, repeats and re-alleges each and every allegation

27

28

contained in the above paragraphs. Please note: at no time in this complaint am I alleging any fraud related to loan origination nor am I complaining of any overt act of fraud related to the origination of this loan. Defendants conspired with WELLS FARGO BANK, NA and their agents and attorneys in violation of the consent decree cited above.

40 Defendants have concealed the roles of the parties and Plaintiff is unsure who the other "debt collectors" of the loans are. Plaintiff will amend this complaint when the appropriate parties who were debt collectors are discovered.

41. Federal law prohibits the use of "any false, deceptive or misleading representation or means in connection with the collection of any debt..." Title 15 USC, Section 1692e.

42. In attempt to foreclosing on Plaintiff's home, and prosecute the subsequent evictions, the debt collector Defendants:

a. made false, deceptive and misleading representation concerning their standing to sue the plaintiffs and the interest in the debt;

b. falsely represented the status of the debt, in particular, that it was due and owing by plaintiffs to defendants at the time an eviction suit was filed;

c. falsely represented or implied that the debt was owing to defendants as an innocent purchaser for value, when in fact, such assignment had not been accomplished;

d. threatened to take action, namely engaging in collection activities and collection and foreclosure proceedings as hired enforcers that cannot legally be taken by them, and

e. used their access to CA state courts to and civil process to file an eviction action against Plaintiff, under false pretenses, namely, that Defendants were duly authorized to engage in such activities when in fact they were not, and they violated the Fourth Amendment in the process and

f. In the case of Purchasers Law Firms, they knew or should have known they did not acquire proper title and are planning to proceed with eviction proceedings against Plaintiff home-owner anyway.

43. Defendants cannot, obtain and/or file an assignment of the notes or mortgages of the named Plaintiff at this time as it would violate the "Pooling and Service Agreements" used in securitization. These Defendants are attempting to deprive us of our rights to use and ownership of our land and home, in violation of the consent decree and the common law of Illinois, by foreclosing without standing and without having recorded the Assignment of Mortgage, signed by a proper party and with appropriate legal authority, prior to filing a civil action in foreclosure as required under Illinois law.

44. Securitizers discovered that that the assignments and proper documents to collect the Subject Loans could not actually be located. To solve the problem of missing assignments, and other documents, new assignments were made and recorded. Most of these Assignments including those allegedly affecting the notes and mortgage for Plaintiff's residence contained false statements. The Assignments were prepared by specially selected law firms and companies that specialized in providing "mortgage default services" to banks and mortgage companies.

45. In all of these cases, the Assignments were prepared to conceal that no valid or proper assignments of the promissory notes or trust deeds ever occurred.

46. The foregoing acts and omissions of Defendants constitute violations of the consent decree as discussed above.

47. Plaintiff is entitled to recover equitable relief, statutory damages, actual damages, reasonable attorney's fees, and costs.

48. WELLS FARGO BANK, N.A. is a company that alleges that they the have the right to foreclose on the subject property in a foreclosure action that was flawed and defective and based upon a series of legal documents recorded in the county recorders office that are flawed and defective.

49. Since the entire foreclose process is flawed and defective as discussed above. I, therefore, deny all statements made in the Civil Processes, filed by WELLS FARGO BANK, NA, since the Plaintiff in that case has never had a lawful interest in the subject property as discussed above. Based upon the foregoing, WELLS FARGO BANK, NA is a stranger to the transaction and has no standing to sign any assignment of Mortgage in this matter.

50. The note and mortgage for the subject property have also acquired the deficiencies and defects in the loan documents assignment documents and securitization of the loan

1   that occurred prior to this case having been filed. These defective documents make the

2   foreclosure and all attempts to collect a debt and the recording of the assignment of

3   mortgage and the filing of an unlawful detainer fraudulent and defective. This means that

4   the Circuit Court had no jurisdiction, because of the defects in the mortgage and

5   subsequent assignments and failure to record an assignment of mortgage signed by the

6   mortgagee. All of these actions taken together; the recording of an invalid Assignment of

7   Mortgage, and the filing of an eviction and foreclosure case by someone who is not a

8   creditor are violations of the FDCPA, Title 15 1692(e), 1692(f). WELLS FARGO

9   BANK, NA never had an ownership interest in the note and Mortgage, and, therefore,

10  does not have the power to enforce the mortgage. By way of illustration, it is well known

11  that WORLD SAVINGS BANK, FSB was in the habit of selling virtually all of their

12  promissory notes and Deeds of Trust, as can be seen in **Exhibit C**, a copy of court

13  pleading filed by the WACHOVIA MORTGAGE, NA, in which they revealed that

14  WORLD SAVINGS BANK, FSB sold their note to BANK OF NEW YORK.

15

16

17

18  51. The rubber stamp used on this document, see **Exhibit C**, is forensic evidence that

19  WORLD SAVINGS BANK, FSB sold virtually all of their promissory notes to THE

20  BANK OF NEW YORK. This indorsed note is similar to all of the promissory notes that

21  are received by banks. The notes are always indorsed by the original lender and then

22  assigned to a note buyer.  In addition, I mailed three Qualified Written Request to the

23  Defendant's and their agent, asking them to produce evidence that they had possession of

24  the note or were acting as an agent for the note-holder and that the note was in their

25  possession, See **Exhibit A**, asking them to produce admissible evidence that they are the

26  owner of the note and entitled to enforce the note. WELLS FARGO BANK, NA

27

28

1    steadfastly refused to produce the original note and refused to provide admissible

2    evidence that allegedly THE BANK OF NEW YORK OR THEIR PRINCIPALS OR

3    AGENTS were the note-holders. Uniform Commercial Code requires the creditor or

4    alleged creditor to supply the debtor with the note with any and all modifications to the

5    note when the note is requested, see UCC 3-501. Illinois law requires the alleged creditor

6    to be in possession of the note as a requirement to enforce the note, see Uniform

7    Commercial Code Section 3-301, 3-309, 1-201(b)(21)(A), 3-201, 3-202, 3-203 3-204, and

8    3-501 all require the alleged lender to be in possession of the note as a prerequisite to

9    enforcement, See Matter of Staff Mortg. & Inv., 550 F 2d 1228, (Ninth Circuit, 1977) and

10   Bear v. Golden Plan of California, Inc. 829 F 3d 705 at 709.

11

12

13

14   52. The overt act of fraud occurred when the Assignment of Mortgage was recorded and

15   subsequently when the Defendants started the foreclosure action to sell and to

16   subsequently evict the Plaintiff from his home. To understand fraud we must take into

17   account the case of McNally v. U.S., 483 U.S. 350, 371-372, Quoting U.S. v Holzer, 816

18   F.2d. 304, at 307. Fraud in its elementary common law sense of deceit includes the

19   deliberate concealment of material information in a setting of fiduciary obligation. A

20   public official is a fiduciary toward the public, and if he deliberately conceals material

21   information from them he is guilty of fraud. "Silence activates estoppel" Carmine v.

22   Bowen, 64 A. 932. These fraudulent acts were designed to mislead us into believing that

23   WELLS FARGO BANK, N.A. has an enforceable interest in the note and mortgage,

24   which they clearly do not.

25

26   53. "Silence can only be equated with fraud where there is a legal or moral duty to speak,

27   or where an inquiry left unanswered would be intentionally misleading." U.S. v. Tweel,

28

1    550 F.2d 297. "Fraud vitiates even the most solemn promise to pay", see U.S. vs.

2    Throckmorton, 98 U.S. 61, 65.

3

4    **54**. Without physical transfer of the note, the sale of the note could be invalid as a

5    fraudulent conveyance, see Uniform Commercial Code, Sections 9-313 through 9-314.

6    The actual note holder should bring forward the evidence that they are the note-holder

7    and the holder of the mortgage. We deny all statements made in the foreclosure NOTICE

8    OF SALE, See **Exhibit D**, the Parties, et. al. in this action, are not the lawful entities to

9    attempt the sale of the subject property because of the defects and deficiencies in the loan

10   administration and lack of disclosures and failure to properly acknowledge and record the

11   assignment-of-mortgage prior to filing the civil case to evict me. **The filing of the**

12   **foreclosure processes is an overt Act of Fraud.** WELLS FARGO BANK, NA is the

13   perpetrator of the fraud, however the Defendants named above have assisted their client

14   in carrying out overt acts of fraud. The Attorneys representing WELLS FARGO BANK,

15   NA are also a perpetrator of this overt act of fraud and they are violators of the Fair Debt

16   Collection Practices Act. Therefore, WELLS FARGO BANK, NA does not have standing

17   to foreclosure as a stranger to the transaction, and they have not established that they have

18   an interest in the note and mortgage as the seller of the subject property, thus they have

19   not perfected the title as required under state law. We do not need permission to occupy

20   the subject property from WELLS FARGO BANK, NA.  WELLS FARGO BANK, NA

21   does not have LAWFUL TITLE to the property, and neither does any alleged successor to

22   WORLD SAVINGS F.S.B. or allegedly THE BANK OF NEW YORK.

23

24

25   **55**. According to the US Supreme Court in **JERMAN v. CARLISLE, M c NELLIE,**

26

27

28

1    **RINI, KRAMER & ULRICH LPA,** 559 US __. (2010), a case involving attorneys

2    enforcing a mortgage and foreclosing on a Defendant:   "(a) A violation resulting

3    from a debt collector's misinterpretation of the legal requirements of the FDCPA

4    cannot be "not intentional" under §1692k(c). It is a common maxim that "ignorance

5    of the law will not excuse any person, either civilly or criminally." *Barlow* v. *United*

6    *States*, 7 Pet. 404, 411. When Congress has intended to provide a mistake-of-law

7    defense to civil liability, it has often done so more explicitly than here. In particular,

8    the administrative-penalty provisions of the FTC Act, which are expressly

9    incorporated into the FDCPA, apply only when a debt collector acts with "actual

10   knowledge or knowledge fairly implied on the basis of objective circumstances" that

11   the FDCPA prohibited its action. §§45(m)(1)(A), (C). Given the absence of similar

12   language in §1692k(c), it is fair to infer that Congress permitted injured consumers

13   to recover damages for "intentional" conduct, including violations resulting from a

14   mistaken interpretation of the FDCPA, while reserving the more onerous

15   administrative penalties for debt collectors whose intentional actions reflected

16   knowledge that the conduct was prohibited." Attorneys are debt collectors when

17   enforcing a mortgage foreclosure under the above ruling and are subject to the

18   FDCPA.

19

20

21

22   56. WELLS FARGO BANK, NA was never the mortgagee, because of their lack of a

23   property interest in the note and mortgage. In addition, the assignment of mortgage

24   document was signed by a stranger to the transaction, the NOTARY who signed the day

25   after the alleged signature of Defendant, and has no force and effect in law. **The identity**

26   **of the note holder in this matter is a mystery.** Without any adherence to the rule of law

27

28

1    regarding the recording requirements and the disclosure of the identity of the note-holder

2    and assignments under federal and state law, the Defendants are acting in defiance of the

3    law, and are taking actions that are a complete affirmation that anyone can foreclose in a

4    case without the proper documentation of their status. It is well known that banks

5    throughout the period from 1999 to today have securitized virtually all of their mortgages

6    for single family dwellings and many have created their own REMICs, which stands for

7    real-estate-mortgage-investment-conduit.

8

9

10   57. The refusal of the Defendants to bring forward the original note with endorsements as

11   required by Uniform Commercial Code Sections 1-201(b)(21)(A), 3-301, 3-309, 3-203,

12   3-204, 3-205 and various sections of Article 9 are forensic evidence that the Plaintiff in

13   the foreclosure case does not have possession of the note.  The Defendant, WELLS

14   FARGO BANK, NA can not conduct a proper foreclosure sale in accordance with

15   California law and their statements in the civil foreclosure processes are incorrect, since

16   there is a gap in the chain of title, because the actual note-holder is not foreclosing and

17   the WELLS FARGO BANK, NA in the pending final unlawful detainer case is not the

18   real-party-in-interest as is required under the Federal Rules of Civil Procedure, Section

19   17(a). I deny all statements made in the foreclosure complaint because the service of

20   process was conducted on behalf on someone who has no standing to foreclose on the

21   subject transaction as discussed above.

22

23

24

25   58. WELLS FARGO BANK, NA in the foreclosure process is not entitled to possession

26   of the property since they are not the real-party-in-interest as discussed above. We further

27   deny all allegations for lack of standing to foreclose and lack of standing to file the

28

Complaint For Damages Page 35

1  unlawful detainer case as discussed above.

2

3  59. When there is fraud involved, then any action that flows from that fraud is null and

4  void and without force or effect in law, *Ex Dolo Malo Non Oritur Actio,* **out of fraud**

5  **no action arises.** Additionally, if this is true the Defendants are liable for fraud,

6  fraudulent conversion and attempted theft of private-property. This claim of ownership of

7  our home and land without a judicial trial by the jury, and without due process of law,

8  access to an appeals process, a final judgment by a court, is a violation of the rules of the

9  common law and the FAIR DEBT COLLECTION PRACTICES ACT, Title 15 USC,

10  Section 1692c, 1692d, 1692e, 1692f, 1692g, 1692i and similar provisions under state law.

11  The fraud has occurred numerous times by way of correspondence and phone calls from

12  the Defendants and their agents over the last two years, during the year 2010, where they

13  attempted to mislead us into believing that we owed them money and they had a lawful

14  claim to enforce the note, even though they did not because WELLS FARGO BANK, NA

15  does not have the note and mortgage in their possession. Also the mortgage-backed-

16  security that allegedly THE BANK OF NEW YORK may have securitized does not have

17  the right of subrogation as a stranger to the transaction. These actions were taken by all of

18  the Defendants, except for the attorneys and their law firm, however the attorney's

19  unlawful actions designed to defeat justice and to steal the subject property from the

20  Plaintiff came much later.

21

22

23

24  60. The Fifth Amendment to our Federal Constitution of 1787, and similar provisions of

25  the California Constitution, guarantees <u>that no person shall be deprived of life, liberty or</u>

26  <u>property without due process of law</u>. I, Terry Conant, The Plaintiff, does not recall ever

27

28

Complaint For Damages Page 36

1    having been given a summons or subpoena or other lawful notice requiring our presence

2    in court in a Quiet Title Action. We do not recall ever having been to court over this

3    matter in a Quiet Title Action. We do not recall a trial by the jury, final judgment, access

4    to the appeals process or having seen a court order regarding a determination of Title in

5    an action to Quiet Title. Article Three of the Constitution for the United States of

6    America and Constitution of the United States provides for jurisdiction under the rules of

7    the common law, see Callan v. Wilson, 127 US 540. The Seventh Amendment to the

8    federal constitution guarantees jurisdiction under the course of the common law. The

9    Defendants actions are not the result of a common law ruling and due process in a court

10    of law, "The 7th Amendment to the Constitution preserves the right of trial by jury in

11    suits at common law involving more than $20, and provides that no fact tried by a jury,

12    shall be reviewed otherwise than according to the rules of the common law.", see 443

13    Cans of Frozen Egg Product v. United States of America; 226 US 172.

14

15

16

17                      **SECOND CAUSE OF ACTION**

18      (Violation of the Plaintiffs Rights to Due Process of law and Intentional infliction of

19                          emotional distress.)

20

21

22    6 i. Plaintiff repeats and re-alleges each and every allegation contained in the above

23    paragraphs. Please note: at no time in this complaint am I alleging any fraud related to

24    loan origination nor am I complaining of any overt act of fraud related to the origination

25    of this loan. Defendants **WELLS FARGO BANK, NA** and their agents and attorneys in

26    violation of Section 1983, 1985 and 1986 of Title 42, US Code. The Defendants

27

28

1
2
3

intentionally inflicted emotional distress knowing that they and their client and co-conspirator does not have standing to foreclose on said property and knowing the loss of a persons home is one of the most traumatic things that anyone can experience.

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

62. The Defendants assisted their client, WELLS FARGO BANK, NA in their continuing theft of my private property, located at 2191 Lindenwood Drive
South Lake Tahoe, CA 96150-5140 and have violated my due process rights, when they knew or should have known that their client, WELLS FARGO BANK,NA does not have standing and capacity to foreclosure. They have served me with a NOTICE OF SALE, **EXHIBIT D.** for finalization of the foreclosure process in Eldorado County. The Defendants have failed to honor, respect or uphold my due process rights, by refraining from proceeding with the pending sale and the subsequent eviction because  WELLS FARGO BANK, NA does not have the note in their possession, and the filing of the NOTICE OF SALE on behalf of WELLS FARGO BANK, NA violates the consent decree for reasons given above. The Defendants have a duty to refrain from proceeding in sale and an eviction, when they lack standing and capacity because the do not have the note in their possession as required under UCC Sections 3-301, 3-203 and 3-501. The Defendants WELLS FARGO BANK, NA have failed to prove or show a court order authorizing private property to be liened, levied or seized based upon a determination of title in an Action to Quiet Title as required under the rules of the common law, and the due process clauses in the Fifth and Fourteenth Amendments, and pursuant to the Fourth Amendment to the US Constitution, as discussed previously. The Defendants have used the organs and institutions of government to seek to obtain fraudulent title to the subject property, without standing and without due process of law, and without a trial by the jury under the rules of the common law. The common law right of due process is found in the Fifth, and Fourteenth Amendments to our Federal Constitution. Violations of the FAIR

28

1   DEBT COLLECTION PRACTICES ACT, have occurred at Title 15 USC, Section

2   1692c, 1692d, 1692e, 1692f, 1692g,1692i when they do not have standing and that

3   foreclosure involves the use of the organs and instrumentalities of government agencies

4   such as the Court or the County Recorder.

5

6   63. The actions taken by the defendants, attempt to deprive me of my liberty and property

7   without due process of law. Article Three of the original constitution for the united States

8   of America calls for law courts, see <u>Callan v. Wilson</u>, 127 U.S. 540, (1888) <u>"And as the</u>

9   <u>guaranty of a trial by jury, in the third article, implied a trial in that mode, **and according**</u>

10  <u>**to the settled rules of common law"**</u>. See also Commentaries on the Constitution by

11  Joseph Story, Volume III, Pages 506-507. Actions by the Defendants to claim to have a

12  security interest in our private land and home and personal property and claim authority

13  to hold a foreclosure sale is an action beyond the scope of their authority as strangers to

14

15  the transaction, and as parties who have not brought a suit against us under common law

16  to litigate title. This is described by the United States Supreme Court as tyranny in;

17  <u>United States v. Lee</u>; 106 US 196, 1S. Ct. 240 (1882) where the United States claimed

18  ownership of property via a tax sale some years earlier, the court made the statements

19  found below.

20

21

22  64. "No man in this country is so high that he is above the law. No officer of the law may

23  set that law at defiance with impunity. All the officers of the government, from the

24  highest to the lowest are creatures of the law and are bound to obey it. It is the only

25  supreme power of our system of government, and every man who by accepting office

26  participates in its functions is only the more strongly bound to submit to that supremacy,

27

28

Complaint For Damages Page 39

1   and to observe the limitations which it imposes upon the exercise of the authority which it

2   gives...... Shall it be said ... that the courts cannot give remedy when the citizen has been

3   deprived of his liberty by force, his estate seized and converted to the use of the

4   government without any lawful authority, without any process of law, and without any

5   compensation, because the president has ordered it and his officers are in possession? If

6   such be the law of this country, it sanctions a tyranny which has no existence in the

7   monarchies of Europe, nor in any other government which has a just claim to well-

8   regulated liberty and the protection of personal rights." In US v. Lee, supra, the

9   government can be considered as similar and applying in like manner as the defendants in

10  the above captioned case. If government agencies cannot take private property without

11  due process of law, how can a bank or mortgage company do so?

12

13  65. The Supreme Court also reaffirmed the right to enjoy private property and not be

14  deprived of it without due process of law in <u>Lynch v. Household Finance Corp.</u>; 405 US

15  538 (1972);

16

17

18

19        "Such difficulties indicate that the dichotomy between personal liberties and

20  property rights is a false one. The right to enjoy property without unlawful deprivation, no

21  less than the right to speak or the right to travel, is in truth a "personal" right whether the

22  "property" in question be a welfare check, a home, or a savings account. In fact a

23  fundamental interdependence exists between the personal right to liberty and the personal

24  right in property. Neither could have meaning without the other. That rights in property

25  are basic civil rights has long been recognized. J. Locke Of Civil Government 82-

26  85(1924); J. Adams A Defense of the Constitutions of Government of the United States

27

28

1    of America, in F. Coker Democracy, Liberty and Property 121-132 (1942); 1 W.

2    Blackstone, Commentaries 138-140."

3

4    66. The taking of private property without due process is clearly a violation of civil

5    liberties as well as personal rights. One of the settled principles of our Constitution is that

6    these Amendments are to protect only against invasion of civil liberties by the

7    government whose conduct they alone limit. Burdeau v. McDowell ; 256 US 465, 41 S.

8    Ct. 574, 65 L Ed. 104813 ALR 1159 (1921); Weeks v. United States; 232 US 383, 34 S.

9    Ct. 341, 58 L. Ed. 652, (1914);Hall v. United States; 41, F 2d 54(9th Cir. 1930); Brown v.

10

11   United States; 12 F 2d. 926 (9th Cir. 1926). Therefore the organs of government cannot

12   be used to participate and assist in the unlawful plunder of our private allodial property.

13   As a result of the foregoing failure to show that WELLS FARGO BANK, is in possession

14   of the note with an endorsement as required under Uniform Commercial Code 3-203, 3-

15   204 and 3-205 and show the chain of title of the note, the actions complained of here, are

16   a violation of the due process clauses of the Fifth and Fourteenth Amendments to the US

17   Constitution because of the lack of prudential and constitutional standing as discussed

18   previously. The lack of standing and failure to establish ratification of commencement

19   under FRCP Section 17(a) amount to a violation of the due process clauses in the Fifth

20

21   and Fourteenth Amendments to the US Constitution. UCC Section 3-203 states as

22   follows:

23

24   **3203**. (a) An instrument is transferred when it is delivered by a

25   person other than its issuer for the purpose of giving to the person

26   receiving delivery the right to enforce the instrument.

27   (b) Transfer of an instrument, whether or not the transfer is a

28

1     negotiation, vests in the transferee any right of the transferor to

2     enforce the instrument, including any right as a holder in due

3     course, but the transferee cannot acquire rights of a holder in due

4     course by a transfer, directly or indirectly, from a holder in due

5     course if the transferee engaged in fraud or illegality affecting the

6     instrument.

7        (c) Unless otherwise agreed, **if an instrument is transferred for**

8     **value and the transferee does not become a holder because of lack of**

9     **endorsement by the transferor, the transferee has a specifically**

10    **enforceable right to the unqualified endorsement of the transferor,**

11    **but negotiation of the instrument does not occur until the**

12    **endorsement is made.**

13       (d) If a transferor purports to transfer less than the entire

14    instrument, negotiation of the instrument does not occur. The

15    transferee obtains no rights under this division and has only the

16    rights of a partial assignee.

17

18    Obviously, the lack of an endorsement on a note deprives WELLS FARGO BANK,

19   NA of the powers to enforce the note and deed of trust because the negotiation has not

20   occurred with the lack of an endorsement on a note.

21

22   **67. The Defendants cannot foreclose without a Judicial Determination of The Status**

23   **of The Defendants as The Owner in a Court of Common Law and by Way of A**

24   **Quiet Title Action**.

25

26

27

28

68. The Defendants, by their action are attempting to force me out of the subject property without due process of law. Pursuant to the rules of the common law, the Defendants do not have the right to foreclose. The Defendants clearly violated Illinois law when they issued and served process for foreclosure proceedings, in absolute defiance of the Due Process Clause of the Fifth Amendment, since California is bound by the US Constitution and because the WELLS FARGO BANK, NA has failed to litigate title in the foreclosure/ unlawful detainer issues. Pursuant to the Fifth Article of Amendment to our Federal Constitution, the Defendants and their clients cannot seek to obtain non-judicial remedies to obtain title, thereby claiming to have a 'perfected title', and thereby circumventing the due process requirements as guaranteed under the Fifth Amendment, by way of the Fourteenth Amendment. A quiet title action must be adjudicated prior to any foreclosure action taken or being tried in court, pursuant to Article Three of the US Constitution and the Constitution for the United States of America.

69. The unlawful actions taken by the Defendants are, therefore, violative of my due process rights, see the Fifth and Fourteenth Amendment to the US Constitution. The US Circuit Court also reaffirmed the right to enjoy private property and not be deprived of it without due process of law in Lynch v. Household Finance Corp.; 405 US 538 (1972). This case is similar and analogous to the Lynch case, referenced above, because property is going to be seized without judicial due process. **The Defendants are proceeding as if rights were waived. I have never waived any rights in this matter, knowingly, intelligently or voluntarily, including our right to judicial due process.** Please see Brady v US; 397 US 742 at 748 for confirmation that rights must be waived knowingly, intelligently and voluntarily.

70. The outcome of this case will determine the ownership of the subject property and the validity of the claims of the parties. The foreclosure actions taken by the Defendants lacks personal and subject matter jurisdiction because of; 1.) the misrepresentation of material facts by the Defendants *that they have the right to foreclose;* 2.) the failure and refusal by the Defendants WELLS FARGO BANK, NA, to produce the original note by exhibiting the instrument as required under UCC 3-501; 3.) the fact that the attempted seizure of the private property in question is not lawful because it violates the doctrine of due process established by Common Law and by the US Supreme Court in <u>Lynch v Household Finance</u>, supra, by skipping and circumventing the requirement to file an Action to Quiet Title under common law to determine with certainty who has title to the property, as required under Article Three of the US Constitution and 4.) it violates my due process rights as Plaintiff in this petition BECAUSE IT VIOLATES THE CONSENT DECREE, CASE 12 0361.

71. **The Defendants have failed or refused to produce the actual note, which the Defendants allege that we owe.** Where the foreclosing party cannot prove the existence of the note, then there is no note. As a result, the Defendants, and each of them, lack standing to enforce the bank loan, which was entered into by me with WORLD SAVINGS FSB for the purchase of the subject land and buildings, the subject property. It is clear from the numerous investor lawsuits filed against banks and the REMICS they set up, that even small regional banks have securitized all of their notes and that they no longer have them in their possession. To recover on a promissory note, the Defendant must prove: (1) the existence of the note in question; (2) that the party sued signed the

1   note; (3) that the Defendant is the owner or holder of the note; and (4) that a certain

2   balance is due and owing on the note.  See In Re: SMS Financial LLC. v. Abco Homes,

3   Inc. . 167 F.3d 235 (1999) February 18, 1999 (5th Circuit Court of Appeals.) Volume 29

4   of the New Jersey Practice Series, Chapter 10 Section 123, page 566, emphatically states,

5   " ...; and no part payments should be made on the bond or note unless the person to whom

6   payment is made is able to produce the bond or note and the part payments are endorsed

7   thereon.

8

9

10  72. It would seem that the mortgagor would normally have a Common law right to

11  demand production or surrender of the bond or note and mortgage, as the case may be.

12  See Restatement, Contracts S 170(3), (4) (1932); C.J.S. Mortgages S 469.  In Carnegie

13  Bank v Shalleck ; 256 N.J. Super 23 (App. Div  1992), the Appellate Division held,

14  "When the underlying mortgage is evidenced by an instrument meeting the criteria for

15  negotiability set forth in N.J.S. 12A:3-104, the holder of the instrument shall be afforded

16  all the rights and protections provided a holder in due course pursuant to N.J.S. 12A:3-

17  302 "Since no one is able to produce the "instrument"  there is no competent evidence

18  before the Court  that any party is the holder of the alleged note or the true holder in due

19  course. New Jersey common law dictates that the plaintiff prove the existence of the

20  alleged note in question, prove that the party sued signed the alleged note, prove that the

21  plaintiff is the owner and holder of the alleged note, and prove that a certain balance is

22  due and owing on any alleged note."  Federal Circuit Courts have ruled that the only way

23  to prove the perfection of any security is by actual possession of the security.

24

25

26

27

28

1  73. The landmark case stating this doctrine is <u>Matter of Staff Mortg. & Inv. Corp.</u>,  550
2  F.2d 1228 (9th  Cir. 1977),  "Under the Uniform Commercial Code, the only notice
3  sufficient to inform all interested parties that a security interest in instruments has been
4  perfected is actual possession by the secured party, his agent or bailee." The above Ninth
5  Circuit ruling was affirmed six times by the Ninth Circuit Court of Appeals and similar
6  rulings were handed down in the Eighth and Sixth Circuits. Bankruptcy Courts have
7  followed the Uniform Commercial Code. <u>In Re Investors & Lenders, Ltd.</u> 165 B.R. 389
8  (Bkrtcy.D.N.J.1994), "Under the New Jersey Uniform Commercial Code (NJUCC),
9  promissory note is "instrument," security interest in which must be perfected by
10  possession."
11
12
13  81. The Defendants have intentionally inflicted emotional distress, knowing that they do
14  not have a lawful claim to ownership of the subject property as discussed above, and all
15  Defendants are strangers to the transaction and they have no lawful claim to the subject
16  property. The civil action complained of was finalized and the court orders were issued
17  after the consent decree was signed.
18
19
20
21                                    **Relief Requested**
22
23  74. In this case, the foreclosure documents were prepared to conceal that no valid or
24  proper assignments of the promissory note or mortgage ever occurred.  The foregoing acts
25  and omissions of Defendants constitute violations of the consent decree, CASE 12 0361.
26
27
28

75. The Plaintiff is entitled to recover equitable relief, statutory damages, actual damages, reasonable attorney's fees, and costs. The Fourth Amendment was also violated as discussed above.

WHEREFORE, I, Terry Conant the Plaintiff, pray for Judgment in our favor and against the Defendants and each of them as follows:

76. For an award of compensatory damages in an amount to be proven at time of trial in favor of the Plaintiffs and against the Defendants, in an amount to be proven at time of trial, but in any event in an amount above the arbitration limits of the court;

77. For punitive damages in an amount to be proven at time of trial;

78. For the Declaratory relief and an order of cease and desist prayed for in the General Allegations of Plaintiff's Complaint;

79. For Plaintiff's costs of suit incurred herein;

80. For an award of Plaintiff's reasonable attorney's fees pursuant to UCC and For a trial by jury; and

81 For prejudgment and post-judgment interest on any damage award at the maximum rate allowed by law; and

82. For such other and further relief as the Court may deem just and proper in the premises.

Complaint For Damages Page 47

# ADDITIONAL RELIEF REQUESTED

83. **One.** I further ask that the ACTIONS taken by the defendant WELLS FARGO BANK, NA to place the property for sale in a public auction in an unlawful foreclosure sale, in violation of the due process provisions of the Fifth and Fourteenth Amendments to the US Constitution, violations of the consent decree CASE 12 0361 and that they cease and desist their actions and activities in pursuance thereof. We also ask for a court order compelling the Defendants to give up any current attempt to take possession and occupancy of the subject property on behalf of the Defendants WELLS FARGO BANK, NA.

84. **Two.** For a declaratory judgment that because the above described property is held in alloidum by me, Terry Conant, and that WELLS FARGO BANK, NA, or their principals and agents including any undisclosed third party note buyer, has never had the right to enforcement of the note and mortgage vas discussed, that Declaratory judgment be issued that no superior title exists by anyone, including the Defendants, and each of them, and that the Defendants WELLS FARGO BANK, NA have no security interest, right, title or interest or lien in said private allodial property, the Defendants and each of them must be found to be without any lawful claim to seize my private allodial property without a warrant, signed under oath, and they are, therefore, compelled to disclaim any right, title or interest in the subject property.

85. **Three.** For an order of Cease and Desist, ordering the Defendants and their agents, including any unregistered foreign agents, to cease and desist any further actions to sell the property subsequent to the fraudulent foreclosure on this alleged debt, because of the failure of consideration and because of the lack of the right of subrogation, the lack

1    of possession of the note and therefore, the lack of any standing to sue for foreclosure or

2    for eviction by the Defendants.

3

4    36.    In addition, I ask for a court order of Cease and Desist ordering the Defendants to

5    cease and desist and to refrain from enforcing any and all actions for eviction or

6    foreclosure, taken by these Defendants, or their agents and assigns, because The

7    Mortgage backed Security (or the Undisclosed Third Party Note Buyer) does not have the

8    right of subrogation as a stranger to the transaction, and because of the gap in the chain of

9    title that was created by the failure of the current note holder to produce a proper

10   accounting and demonstrate who is the current holder-in-due-course by production of the

11   original note which is known as Exhibiting the Instrument pursuant to UCC 3-501, with

12   an endorsement on the note and not a copy, see UCC 3-501, UCC 3-203. We ask for an

13   order of cease and desist, commanding the Defendants to refrain from taking any actions

14   whatsoever to order an eviction of me from the subject property or to file any further

15   foreclosure cases against us until the time that this matter is settled and that all appeals

16   have run their course.

17

18   **87.    WE ARE NOT ASKING FOR MONETARY DAMAGES** if this complaint is

19   uncontested. Uncontested means that no answer and no motions or other pleadings are

20   filed by the Defendants. If, however, the complaint is contested we ask for damages as

21   described herein.  I, Terry Conant, the Plaintiff in this matter, demand punitive damages

22   FOR ENGAGING IN ACTS OF OPPRESSION, FRAUD AND MALICE, from the

23   defendant WELLS FARGO BANK, NA, in the amount of $ 80,000.00, SILVER SPECIE

24   sum certain payable in silver one ounce coins minted by the United States Treasury, if the

25   suit is contested and FOR ENGAGING IN ACTS OF OPPRESSION, FRAUD AND

26   MALICE, from the defendants ANGLIN, FLEWELING, RASMUSSEN, CAMPBELL

27

28

1   TRYTTEN LLP, in the amount of $ 80,000.00, SILVER SPECIE sum certain payable in

2   silver one ounce coins minted by the United States Treasury, if the suit is contested, and

3   FOR ENGAGING IN ACTS OF OPPRESSION, FRAUD AND MALICE, from the

4   defendant NDEx West, L.L,C, the  in the amount of $ 80,000.00, SILVER SPECIE sum

5   certain payable in silver one ounce coins minted by the United States Treasury, if the suit

6   is contested, and FOR ENGAGING IN ACTS OF OPPRESSION, FRAUD AND

7   MALICE, from the defendant AGENCY SALES & POSTING the  in the amount of

8   $ 80,000.00, SILVER SPECIE sum certain payable in silver one ounce coins minted by

9   the United States Treasury, if the suit is contested, and FOR ENGAGING IN ACTS OF

10   OPPRESSION, FRAUD AND MALICE, from the defendant, JOHN D. AGOSTINI

11   SHERIFF – CORONER ELDORADO COUNTY CALIFORNIA, if the suit is contested,

12   and FOR ENGAGING IN ACTS OF OPPRESSION, FRAUD AND MALICE.

13

14

15   The Plaintiff seeks to be paid in the lawful money of the United States of America,

16   pursuant to Article One, Section Ten of the Constitution for the United States of America.

17

18

19   88.    I, Terry Conant, the Plaintiff in this matter, and the aggrieved, injured party

20   demand cost for this suit, if the suit is contested.

21

22   89,    Leave to amend the complaint pursuant to Federal Rules of Civil Procedure §

23   15(a) once discovery is completed and the defendants have raised the usual FRCP

24   12(b)(6) objections and the usual avalanche of procedural gimmicks.

25

26   90.    An order from the court explaining where the complaint is deficient and how to

27   correct it.

28

1

2    9l.    Such other relief as the court deems just, proper and equitable.

3       Respectfully Submitted,

4

5    Dated: 4/16/12

6

7    *Terry Walter Conant*

     TERRY WALTER CONANT, Plaintiff, *pro*
8    2191 Lindenwood Drive
     South Lake Tahoe, CA 96150-5140
9    Phone: 530.416.0452

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24                        **VERIFICATION**

25       We have read the **PETITION FOR DECLARATORY AND INJUNCTIVE**

26    **RELIEF PURSUANT TO TITLE 28, US CODE SECTION 2201, 2202** and know the

     contents thereof to be true; and the same is true of my own knowledge, except to the
27

28
                        Complaint For Damages Page 51

1   matters, which are therein stated on our information and belief, and as to those matters, I

2   believe them to be true. The foregoing is true, correct, complete and not misleading.

    Sealed by the voluntary act of my own hand on this *16Th* _____ day of the

3

4   _____ *Apr.l* _____ month, in the Year of our Lord, two thousand and thirteen.

5

6   *Terry Walter Conant*
    TERRY WALTER CONANT

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**LIST OF EXHIBITS**

2

3    EXHIBIT A          QUALIFIED WRITTEN REQUESTS (3)

4    EXHIBIT B          DEED OF TRUST and NOTE

5    EXHIBIT C          COPY OF A PLEADING WITH AN ENDORSEMENT OF

6                       NOTE (WORLD SAVINGS to NEW YORK BANK)

7    EXHIBIT D          NOTICE OF SALE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SERVICE LIST

1

2      Defendants:                                    Interested Parties:

3
       WELLS FARGO BANK, N.A.                         Lawyers Incorporating Service
4      Attn: CARRIE TOLSTEDT, PRESIDENT               Service Agent For Wells Fargo
       A0101-121                                      2710 Gateway Oaks Drive
5      420 MONTGOMERY ST                              STE 150 N.
6      SAN FRANCISCO, CA 94104                        Sacramento CA. 95833

7
       NDEX WEST, LLC                                 National Registered Agents Inc,
8      15000 Surveyor Boulevard, Suite 500            Service Agent For NDEX West LLC.
       Addison, TX 75001-9013                         2875 Michelle Drive
9                                                     Irvine CA. 92606
       AGENCY SALES & POSTING
10     3210 El Camino Real, Suite 200
       Irvine, CA 92602
11

12     Anglin, Flewelling, Rasmussen,
       Campbell & Trytten LLP
13     199 South Los Robles Avenue, Suite 600
       Pasadena, California 91101-2459
14

15     JOHN D. AGOSTINI SHERIFF – CORONER
       ELDORADO COUNTY CALIFORNIA
16     1360 Johnson Blvd, Ste 100
       S. Lake Tahoe, CA 96150
17

18     Clerk of Court
       The County Courthouse
19     495 Main Street
       Placerville, CA 95667
20
                            **CERTIFICATE OF SERVICE**
21

22

23        I HEREBY CERTIFY that a true and correct copy of the foregoing SERVICE

24     LIST furnished by process of service SUMMONS via U.S. CERTIFIED Mail to the

25     above listed persons.                    This ____ day of April, 2013.

26
                                            _____
27                                          TERRY WALTER CONANT

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A.

## QUALIFIED WRITTEN REQUEST SPECIFIC TO ONE ITEM

Date:_____

Certified mail number:_____

From:
TERRY WALTER CONANT                          LOAN NUMBER: 0046373957
2191 Lindenwood Drive
South Lake Tahoe, CA 96150-5140

AFRCT
199 SO. Los Robles Avenue, Suite 600
Pasadena CA. 91101-2459

WELLS FARGO BANK, NA
LOSS MITIGATION DEPARTMENT
2671 College Park
Scottsbluff, N.E. 69361

California law requires you to supply evidence that the original note is in your
possession, with endorsements demonstrating that the note is in your possession, see
California Commercial Code Section 3501(2) California Civil Code Section 2943(b)(1),
see Pribus v. Bush 118 Cal App. 3d 1003(1981). As a result, you must supply the
evidence discussed above as soon as possible. **THIS IS A LAWFUL DEMAND
PURSUANT TO CALIFORNIA COMERCIAL CODE 3501(2) AND UCC 3-501
THAT YOU EXHIBIT THE INSTRUMENT.**

Your failure to satisfy this request in accordance with the requirements of the Fair Debt
Collection Practices Act will be construed to be an absolute waiver of any and all claims
against me, and your tacit agreement to compensate me for costs and attorney fees. Please
complete the creditor form attached.

Signature_____
          TERRY WALTER CONANT

TERRY WALTER CONANT
2191 Lindenwood Drive
South Lake Tahoe, CA 96150-5140


DATE _____, 2013

WELLS FARGO BANK, NA
Loss Mitigation
2671 College Park
Scottsbluff, NE 69361

Loan #'s 0046373957
Borrower(s) Name: TERRY CONANT
Property Address: 2191 Lindenwood Drive
South Lake Tahoe, California [96150-5140]


## RE: RESPA QUALIFIED WRITTEN REQUEST, COMPLAINT, DISPUTE OF DEBT & VALIDATION OF DEBT LETTER

Dear Madam or Sir:

I am writing to you to complain about the accounting and servicing of my mortgage and my need for understanding and clarification of various charges, credits, debits, transactions, actions, payments, analyses, and records related to the servicing of my loan from its inception to the present date. As such, please treat this letter as a **"Qualified Written Request"** under the Real Estate Settlement Procedures Act, codified as Section 2605 (e) of Title 12 of the United States Code. As you may know, RESPA provides substantial penalties and fines for non-compliance or answers to my questions provided in this letter within sixty [60] days! PLEASE EXHIBIT THE INSTRUMENT PURSUANT TO UCC 3-501.

Due to the recent mortgage market meltdown and your involvement in this market, I am concerned that my loan has not been properly credited, amortized, calculated, and serviced properly. I am also concerned with the ownership of my promissory note; to whom my actual obligation is owed to; who is my actual lender; and your authority to collect payments and/or negotiate the purchase/repurchase of my promissory note from my actual lender.

The meltdown of the mortgage market and the effects of any financial manipulation may have affected the current amount you claim I owe as the principal balance due on my loan which may not be correct and may not have been properly amortized. In addition, I am concerned that my escrow payments and/or my monthly payments may have been adversely affected and that I may be paying more than what I owe or less than is necessary to properly amortize my mortgage over its term.

Qualified Written Request          Page     1

Upon receipt of this letter, please refrain from reporting any negative credit information to any credit reporting agencies until you respond to the "requests" in this letter.

Due to the current economic climate, I am exploring various options to protect my property and finances. My home is a very important and valuable asset to me that I desire to protect. Please don't infer any negative connotation by my letter, but the industry-wide practices employed in recent years trouble me and I am seeking information to not only alleviate my concerns, but to guard against future problems.

I am examining my finances and making determinations as to how best to payoff, reduce, and/or refinance my mortgage and/or sell my property to one interest or another. I executed a promissory note that is a contract between myself and the original lender. The United States government may actually own my promissory note. If so I or investors I know, may desire to purchase back my promissory note from the government or my actual current lender, at a profit, as part of a purchase of my property and/or restructuring of my finances.

I have contracted with a firm to audit my mortgage loan that you service as well as explore various purchase, sale, refinancing, loan, business, and financial options for me. In order to conduct this examination and audit, I need to have full and immediate disclosure including copies of all pertinent information related to my loan. As such, please send to me, at the address above, copies of the following documents and answers to my servicing related questions below within the 60-day time frame. I need to know the information requested herein because of the fact that frequently two or more "lenders" request payment on the same loan and because of the fact that most notes are sold to a mortgage backed security and securitized and the actual note holder is not the "creditor" attempting to foreclose on the mortgage/deed of trust/ note and the identity of the actual note holder cannot be determined, so that the party foreclosing frequently does not have possession of loan origination documents and does not have standing to foreclose under FRCP Rule 17(a). I am relying upon UCC 1-201(b)(21)(A), 3-301, 3-305, 3-309, 9-304, 9-305 3-203, and 3-205 in part for my authority to require this information. See also Matter of Staff Mortg. & Inv. Co., 550 F 2d 1227, (CA 9, 1977) and six subsequent cases handed down by the Ninth Circuit as well as similar cases issued by the Fifth, Sixth and Eighth Circuit Courts for authority to require this information. In Massachusetts one law firm was fined $ 100,000.00 by the bankruptcy judge for concealing the fact that their client was not even a loan servicer at the time that they filed a claim in a bankruptcy case. **In addition, you must respond to this QWR, pursuant to Title 15, US Code, Section 1641(g), requiring that you make full disclosure of the assignee or assignees of the promissory note and deed of trust. Failure to comply with this provision of law will result in a civil Action filed against you in Federal Court.**

I hereby demand absolute first hand evidence from you of the original uncertificated or certificated security regarding the above account/ loan numbers. In the event you do not supply me with the very security it will be a positive confirmation on your part that you do not have the requisite documentation

needless to say the possession of a note. As you know possession of the original note is the most important document here.

I also hereby demand that a chain of transfer from you to wherever the security is now be promptly sent to me as well. Absent the actual evidence of the security I have no choice but to dispute the validity of your lawful ownership, funding, entitlement right and the current debt you say I owe. By the debt I am referring to the principal balance you claim I owe: the calculated monthly payment, calculated escrow and any fees claimed to be owed by you or any trust you may service or sub-service for.

This can be done independently and to validate this debt, I need to conduct a complete exam, audit, review and accounting of this mortgage account from its inception through the present date.

I also request that you conduct your own investigation and audit of this account since its inception to validate the debt you currently claim I owe. I would like you to validate the debt you currently claim I owe. I would like you to validate the debt so that it is accurate to the penny!

Please do not rely on previous servicing companies or originators records, assurances or indemnity agreements and refuse to conduct a full audit and investigation of this account.

I understand that potential abuses by you or previous servicing companies could have deceptively, wrongfully, unlawfully, and/or illegally:
increased the amounts of monthly payments;
increased the principal balance I owe;
increased the escrow payments;
increased the escrow payments;
increased the amounts applied; and attributed toward interest on this account;
decreased the proper amounts applied and attributed toward the principal on this account and/or
Assessed, charged and/or collected fees, expenses and miscellaneous charges I am not legally obligated to pay under this mortgage, note and/or deed of trust.
I request that you insure that I have not been the victim of such predatory servicing and lending practices.

To insure this I have authorized a thorough review, audit, examination, accounting of the above mortgage account file from the date of initial contact, application and the origination of this account to the present date written above.

**Again, this is a Qualified Written Request under the Real Estate Settlement Procedures Act, codified as Title 12 section 2605(e) of the United States Code as well as a request under the Truth In Lending Act 15 U.S.C. section 1601. RESPA provides substantial penalties and fines for non-compliance or failure to answer my questions provided in this letter within sixty (60) days of its receipt.**

In order to conduct the examination and audit of this loan, I need to have a full and immediate disclosure including copies of all pertinent information regarding this loan. The documents requested and answers to my questions are needed by myself and others to ensure this loan:

1. Was originated in lawful compliance with all federal and state laws, regulations including, but not limited to Title 62 of the Revised Statutes, RESPA, TILA, Fair Debt Collections Practices Act, Act HOEPA and other laws;

2. That the origination and/or any sale or transfer of this account or monetary instrument, was conducted in accordance with proper laws and was a lawful sale with complete disclosure to all parties with an interest;

**3. That you disclose the claimed holder in due course of the monetary instrument/deed of trust/asset is holding such note in compliance with statutes, State and Federal laws and is entitled to the benefits of payments;**

**4. That all good faith and reasonable disclosures of transfers, sales, Power of Attorney, monetary instrument ownership, entitlements, full disclosure of actual funding source, terms, costs, commissions, rebates, kickbacks, fees, etc. were and still are properly disclosed to me, including, but not limited to the period commencing with the original loan solicitation, through and including all parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof.**

## DOCUMENTS NEEDED TO CONDUCT AUDIT

- All "master" transaction registers/ledgers of my loan in your servicing files or backup files with you or any sub-servicer, including but not limited to the Fidelity mortgage servicing system, FiServ or any mortgage servicing system you use. Please provide all information residing in any data field in the system or any component that supports the system that deals with any of the questions listed below. (no screen or partial dumps or spreadsheets please).

- Also, please provide and include all descriptions and legends of all Codes used in your mortgage servicing and accounting system so that the examiners, auditors and experts I have retained to audit and review my mortgage account may properly conduct their work.

- A certified copy of the front and back portion of my original wet ink promissory note as it exists today along with all endorsements, affixed or un-affixed allonges, and assignments whether recorded or not.

- A certified copy of the front and back portion of my original wet ink deed of trust as it exists today along with all assignments whether recorded or not.

- Cancelled checks, wire transmittals or other evidence of payment for each assignment of my promissory note.

Qualified Written Request          Page     4

- All executed, recordable and "non-recordable" assignments associated with my loan including, but not limited to assignments, transfers, allonges, or other documents evidencing a transfer, sale or assignment of my mortgage, deed of trust, promissory note or other document that secures payment by me to my obligation in this account from the inception of my loan to the present date.

- All records, electronic or otherwise, of assignments of my mortgage, promissory note, or servicing rights to my mortgage.

- All escrow analyses conducted on my account from the inception of my loan until the date of this letter.

## SERVICING RELATED QUESTIONS I NEED ANSWERED

After the recent problems in the mortgage market, I have many servicing related questions in addition to the questions enumerated above. I worry that I do not have good and proper title to my property and that the amounts you claimed owed by me are incorrect. Please answer the following questions for me.

1. What is your actual servicing relationship with my loan? Are you the servicer, master servicer, interim servicer, private label servicer, default servicer, sub-servicer, and/or special servicer of my loan?

2. Has my promissory note ever been securitized? If so kindly inform me of the following information:

a.  All trusts, SPVs, QSPEs, REMICS, and entities that my note has been assigned to from its inception to the current date?

b.  The current trust, SPV, QSPE, SPE, REMIC or entity my note is owned by?

3. Is there any Fannie Mae, Freddie Mac, Ginnie Mae, FHA, HUD, VA, or private guarantee related to my loan?

a.  If yes, who has provided this guarantee and what portion of my payment goes to this guarantee?

4. Who is the document custodian that safeguards and holds my "original" promissory note that I/we signed in ink?

5. Does my original promissory note currently have any "blank endorsements" on it? [Yes/No]

a.  If yes, can you kindly explain why?

b.  If yes, can you kindly tell me as of the date written above:

i.  Who owns my note and is the actual current "lender" and not servicer of my note?

ii.          Who claims to be the holder of my note?

iii.         Has the United States government or the Federal Reserve purchased the note?

6. Does my original promissory note properly reflect the chain of title from one interest to another? [Yes/No]

7. Are there any missing assignments? [Yes/No]

a.       If yes, can you kindly explain why?

8. Has any due diligence and/or quality control services conducted by you or any other entity on my loan identified any red flags, frauds, misrepresentations, misstatements, errors, or problems?

a.       If yes, can you kindly detail for me?

9. Has my loan ever been classified as a "scratch and dent" loan?

a.       If yes, can you kindly detail for me why?

10. Will I receive my original (signed in ink) promissory note stamped "Cancelled & Paid In Full" when it is paid off or refinanced?

a.       If no, can you tell me why not?

11. Have any BPOs, property inspections, and/or appraisals by you or any investor been conducted on my property since the inception of my loan? [Yes/No]

a.       If yes, have I been charged or assessed any fee for any BPOs, property inspections or appraisals after the inception of my loan? [Yes/No]

i.         If yes, kindly tell me the date of such BPO, property inspections or appraisal, the amount paid and provide me with copies of all documents related to each BPO, property inspections or appraisal conducted on my property including, but not limited to reports, orders, invoices and cancelled checks for payments.

12. Who may I contact to negotiate the purchase and/or repurchase of my promissory note?

13. What is the name and date of the pooling and servicing agreement that governs your servicing of my loan?

a.       Where can I secure a copy of this agreement?

14. Is there any power of attorney ("POA") filed in my property's county or any other county that governs your relationship with my loan?

a.       If yes, kindly identify for me the country where the POA is filed and the filing number, name, and date of the POA?

## SUSPENSE/UNAPPLIED ACCOUNT QUESTIONS

For purposes of this section, please treat the term "suspense account" and "unapplied account" as one in the same.

1. Has there been any suspense or unapplied account transactions on my account from the inception of my loan until present date?

a.   If yes, why?  If no, please skip the questions in this section dealing with suspense and unapplied accounts.

b.   In a spreadsheet or in letter form in a columnar format, please detail for me each and every suspense or unapplied transaction, both debits and credits that has occurred on my account from the inception of my loan until present date?

c.   What is my current suspense account balance?

d.   Why was my money placed into suspense and how will it be allocated to my loan?

## LATE FEE QUESTIONS

For purposes of my questions below dealing with late fees, please consider the terms "late fees" and "late charges" to be one in the same.

1.   Has there been any late fee transactions on my account from the inception of my loan until the present date?

a.   If yes, why?  If no, please skip the questions in this section dealing with late fees.

b.   In a spreadsheet or in letter form in a columnar format, please detail for me each and every late fee transaction, both debits and credits that has occurred on my account from the inception of my loan until present date?

c.   What is my current late fee balance?

2.   Have you reported the collection of late fees on my account as interest in any statement to me or to the IRS?  Yes or No?

3.   Do you consider the payment of late fees as liquidated damages to you for not receiving my payment on time?  Yes or No?

4.   Are late fees considered interest?  Yes or No?

5.   Please detail for me in writing what expenses and damages you incurred for any payment I made that was late.

6.      Were any of these expenses or damages charged or assessed to my account in any other way?  Yes or No?

7.      If yes, please describe what expenses or charges were charged or assessed to my account?

8.      Please describe for me in writing what expenses you or others undertook due to any payment I made that was late?

9.      Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed authorized the assessment or collection of late fees?

Thank you in advance for addressing the questions and issues above.  Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to a further document requests and answers to questions under an additional QWR letter.

It is my hope that my immediate questions and audit will validate my debt to the penny.  If not, we will need to correct and adjust any errors or abuses identified.  I also want to negotiate a purchase price for my note from my actual lender.

### *Please also send me copies, front and back, of:*

*1. Any documentation evidencing any trust relationship regarding the Mortgage/Deed of Trust and any note in this matter;*

*2. Any and all document(s) establishing any Trustee of record for the Mortgage/Deed of Trust and any Note;*

*3. Any and all documents the date of any appointment of Trustee for the Mortgage/Deed of Trust and any Note, including any and all assignments or transfers or nominees of any substitute trustee(s);*

*4. Any and all document(s) establishing any Grantor for this Mortgage/Deed of Trust and any Note;*

*5. Any and all document(s) establishing any Beneficiary for this Mortgage/Deed of Trust and any Note;*

*6. Any and all documentation evidencing the Mortgage/Deed of Trust is not a constructive trust or any other form of trust;*

Qualified Written Request          Page    8

*7. All data, information, notations, text, figures and information contained in your mortgage servicing and accounting computer systems including, but not limited to Alltel or Fidelity CPI system, or any other similar mortgage servicing software used by you, any servicers, or sub-servicers of this mortgage account from the inception of this account to the date written above.*

*8. All Descriptions and legends of all Codes used in your mortgage servicing and accounting system so that the examiners and auditors and experts retained to audit and review this mortgage account may properly conduct their work.*

*9. All assignments, transfers, allonge, or other documents evidencing a transfer, sale or assignment of this mortgage, deed of trust, monetary instrument or other document that secures payment by me to this obligation in this account from the inception of this account to the present date including any such assignments on MERS.*

*10. All records electronic or otherwise, of assignments of this mortgage, monetary instrument or servicing rights to this mortgage, including any such assignments on MERS.*

*11. All deeds in lieu, modifications to this mortgage, monetary instrument or deed of trust from the inception of this account to the present date.*

*12. The front and back of each and every cancelled check, money order, draft, debit or credit notice issued to any servicers of this account for payment of any monthly payment, other payment, escrow charge, fee or expense on this account.*

*13. All escrow analyses conducted on this account from the inception of this account until the date of this letter.*

*14. The front and back of each and every cancelled check, money order, draft or debit notice issued for payment of closing costs, fees and expenses listed on any and all disclosure statements including, but not limited to appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, commissions, attorney fees, points, etc.*

*15. The front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others or me on this account.*

*16. All letters, statements and documents sent to me by your company.*

*17. All letters, statements and documents sent to me by agents, attorneys or representatives of your company.*

*18. All letters, statements and documents sent to me by previous servicers, sub-servicers or others in your account file or in your control or possession or in the control and possession of any affiliate, parent company, agent, sub-servicers, servicers, attorney or other representative of your company.*

*19. All letters, statements and documents contained in this account file or imaged by you, from any servicers or sub-servicers of this mortgage from the inception of this account to the present date.*

*20. All electronic transfers, assignments and sales of the note/asset, mortgage, deed of trust or other security instrument.*

*21. All copies of property inspection reports, appraisals, BPOs and reports done on my property.*

*22. All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense, which has been charged to this mortgage account from the inception of this account to the present date.*

*23. All checks to pay invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense, which has been charged to this mortgage account from the inception of this account to the present date.*

*24. All agreements, contracts and understandings with the vendors that have been paid for any charge on this mortgage account from the inception of this account to the present date.*

*25. All account servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, account histories, accounting records, ledgers, and documents that relate to the accounting of this account from the inception of this account to the present date.*

*26. All account servicing transaction records, ledgers, registers ands similar items detailing how this account has been serviced from the inception of this account to the present date.*

*Further, in order to conduct the audit and review of this account, and to determine all proper amounts due, I need the following answers to questions concerning the servicing and accounting of this mortgage account from its inception to the present date. Accordingly please provide me, in writing with answers to the following questions:*

*In regard to Mortgage and Assignments:*

*1. Has each sale, transfer or assignment of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in the county property records in the county and state in which my property is located from the inception of this account to the present date? Yes or No?*

*2. If not why not?*

*3. Is your company the servicer of this mortgage account or the holder-in-due-course and beneficial owner of this mortgage, monetary instrument and/or deed of trust?*

Qualified Written Request                Page    10

*4. Have any sales, transfers or assignments of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in any electronic fashion such as MERS or other internal or external recording system from the inception of this account to the present date? Yes or No?*

*5. If yes Please detail for me the names of seller, purchaser, assignor, assignee, or any holder-in-due-course to any right or obligation of any note, mortgage, deed of trust or security instrument I executed securing the obligation on this account that was not recorded in the county records where my property is located whether they be mortgage servicing rights or the beneficial interest in the principal and interest payments.*

I eargerly await your prompt response to this request.

Sincerely,

TERRY WALTER CONANT
2191 Lindenwood Drive
South Lake Tahoe, CA 96150-5140

Date:_____

Certified mail number:_____

From:
TERRY WALTER CONANT
2191 Lindenwood Drive
South Lake Tahoe, CA 96150-5140

To:
WELLS FARGO BANK, NA
Loss Mitigation
2671 College Park
Scottsbluff, NE 69361

AFRCT
199 So. Los Robles Avenue
Suite 600
Pasadena CA. 91101

RE: QUALIFIED WRITTEN REQUEST/ OFFER OF PERFORMANCE FOR WELLS
FARGO BANK N.A., Creditor Claim/Notice of Intent to enforce rights under State and
Federal Law RICO Title 18 USC Sections 1961, 1962 Et Seq and sections 891-894 for
extortionate credit transactions/ Loan numbers 004637957.

Sir or Madam:

You are in receipt of notice under the authority of The Fair Debt Collections Practices
Act regarding your file/ loan numbers 0046373957. This debt is in dispute. I am acting on
behalf myself and others similarly situated who are co-owners of the property, which has
been encumbered under the above loan agreement. It is not now, nor has it ever been my
intention to avoid paying any obligation that I lawfully owe. In order for me to make
arrangements to pay an obligation which I may owe, please document and verify the
"debt" by complying in good faith with this request for validation and notice that I
dispute part of, or all of the alleged debt. As you know, California law requires you to
supply evidence that the note is in your possession, with endorsements demonstrating that
the note is in your possession, see California Commercial Code Section 3501(2)
California Civil Code Section 2943(b)(1), see Pribus v. Bush 118 Cal App. 3d
1003(1981). As a result, you must supply the evidence discussed above as soon as
possible. **THIS IS A LAWFUL DEMAND PURSUANT TO CALIFORNIA
COMERCIAL CODE 3501(2) AND UCC 3-501 THAT YOU EXHIBIT THE
INSTRUMENT.**

This document is my good faith offer of performance to pay any amount of money you
say that I owe up to and including the full amount of the alleged debt, the law also allows

me to make my good faith offer of performance to depend upon a condition precedent and if the offer of performance is not accepted the obligation is extinguished.

This offer is made pursuant to the California Civil Code Section 1485 as follows:

**1485.** OBLIGATION EXTINGUISHED BY OFFER OF PERFORMANCE.

An obligation is extinguished by an offer of performance, made in conformity to the rules herein prescribed, and with intent to extinguish the obligation. (Enacted 1872)

And California Code of Civil Procedure, Section 2074, as follows:

**2074** OFFER TO PAY OR DELIVER AS EQUIVALENT TO ACTUAL TENDER, An offer in writing to pay a particular sum of money, or to deliver a written instrument or specific personal property, is if not accepted, equivalent to the actual production and tender of the money, instrument, or property. (Enacted 1872).

Pursuant to California Civil Code, Section 1498, this offer to pay the amount of any money that is lawfully due, up to and including the amount of $ 820,000.00 plus attorneys fees and penalties and interest is made to dependent upon performance of a condition precedent to which I am entitled by the fundamental principles of American Jurisprudence and law, namely:

A. presentation of evidence sufficient to demonstrate that the obligation for me to pay this amount, if such exits arises by either:

1. Operation of Law, or;

2. Contract of the Parties, and;

B. If the Obligation is created by a promissory note and deed of trust, presentation of the original promissory note which demonstrates that you are the holder-in-due-course of the promissory note or acting on behalf of someone who has possession of the promissory note and deed of trust and that you or the note holder bring forward the original promissory note with an endorsement that shows the note has been endorsed over to the party claiming to be the note holder and beneficiary demonstrating that the note is in your or their possession pursuant to California Commercial Code Sections 3501, 1201(b)(21)(A), 3309, 3301, 3305, 3203, 3205 and Matter of Staff Mortg. & Inv. Co., 550 F 2d 1228, (Ninth Circuit, 1977) and that you or the note holder has recorded an assignment of the deed of trust as required under California Civil Code Section 2932.5. I also require as a condition precedent that you (1.) validate the debt; (2.) demonstrate that you are requesting payment of debt in legal tender that conforms to the requirements under all provisions of the US Constitution and the California Constitution; (3.) that you and the actual note holder have the right of subrogation and are not a stranger to the

2

transaction, see <u>Aetna L. Ins. Co. v. Middleport</u>, 124 US 534, (1888) and (4.) that you and
the actual note holder are not violating Section 3106 of California Commercial Code, and
have not bought or sold a promissory note that is non-negotiable because the rider makes
the note a conditional promise to pay.

California Civil Code, Section 1498 states the following:

**1498.** PERFORMANCE OF CONDITION PRECEDENT. When a debtor
is entitled to the performance of a condition precedent to, or concurrent with,
performance on his part, he may make his offer to depend upon the due performance of
such condition. ( Enacted 1872 ).

It should be noted that California Civil Code Section 1501 provides the authority for me
to expect and require that if you have any objection to the mode of this offer, it must
immediately state that objection as follows:

### 1501. OBJECTIONS TO MODE OF OFFER

**1501.** OBJECTIONS TO MODE OF OFFER. All objections to the mode
of an offer of performance, which the creditor has an opportunity to state at the time
to the person making the offer, and which could then be obviated by him, are waived by
the creditor, if not then stated.

And California Code of Civil Procedure, Section 2076 as follows:

**2076.** OBJECTIONS TO TENDER MUST BE SPECIFIED. The person to
whom a tender is made, must, at the time, specify any objection he may have to the
money, instrument, or property, or he must be deemed to have waived it: and if the
objection be to the amount of money, the terms of the instrument, or the amount or kind
of property he must specify the amount, terms or kind which he requires, or be precluded
from objecting afterward.

I am in receipt of your correspondence notifying me of your servicing of the promissory
note or debt I signed with **WORLD SAVINGS BANK** for my note and deed of trust with
that bank/lender. Most of the time banks sell their notes within a few weeks of receiving
the signed promissory note and deed of trust. I noticed that you are also requesting
payment of that alleged debt. Perhaps you were unaware that the right of subrogation does
not exist for a stranger to the transaction. IT APPEARS THAT you have failed and
refused to produce the original note as required under a ruling by the Ninth Circuit Court
of Appeals, see Matter of Staff Mortg. & Inv. Co., 550 F 2d 1228. This means that your
bank, as successor to **WORLD SAVINGS BANK**, is not in possession of the note and said
note has been sold to a Third-Party-note-buyer, probably a mortgage backed security. Is
the Third-Party-note-buyer a cosigner on the note? I do not think so. I conclude that
**WORLD SAVINGS BANK'S** Third Party note buyer is a stranger to the transaction. The

3

Third-Party-note-buyer is apparently the current holder of the note and deed of trust, even though they have not brought forward said loan origination documents and they do not have the right of subrogation as strangers to the original transaction. Additionally, **WORLD SAVINGS BANK**'s Third Party note buyer has never been a co-signer on any debt obligation I have entered into and the Third-Party-note-buyer is not secondarily liable to the original creditor, for the alleged debt. Please review the following for affirmation that the right of subrogation does not exist in this matter; <u>Henningsen v. United States Fidelity & G. Co.</u>; 208 US 404; 52 L. Ed 547, 28 S. Ct. 389; <u>Prairie State National Bank v. United States</u>; 164 US 227; 41 L. Ed. 412; 17 S. Ct. 142; <u>Aetna L. Ins. Co. v. Middleport</u>; 124 US 534; 31 L. Ed. 537; 8 S. Ct. 625; <u>McBride v. McBride</u>; 148 Or 478 36 P 2d 175.

1. Please furnish the original promissory note redacting my social security number to prevent identify theft and state under penalty of perjury that you are the holder in due course of the promissory note and will produce the original for my own and a judge's inspection should there be a trial to contest these matters pursuant to UCC 3-501.
2. Please produce the account and general ledger statement showing the full accounting of the alleged obligation that you are now attempting to collect.
3. Please identify by name and address all persons, corporations, associations, or any other parties having an interest in legal proceedings regarding the alleged debt.
4. Please verify under penalty of perjury, that as a debt collector, you have not purchased evidence of debt and are proceeding with collection activity in the name of the original maker of the note.
5. Please verify under penalty of perjury that you know and understand that certain clauses in a contract of adhesion, such as a so-called forum selection clause, are unenforceable unless the party to whom the contract is extended could have rejected the clause without impunity.
6. Please verify under penalty of perjury that you know and understand that the right of subrogation does not exist for a stranger to the transaction.
7. Please provide verification from the stated creditor that you are authorized to act for them.
8. Please verify that you know and understand that contacting me again after receipt of this notice without providing procedurally proper validation of the debt constitutes the use of interstate communications in a scheme of fraud by advancing a writing, which you know is false with the intention that others rely on the written communication to their detriment.
The debtor has a Common law right to demand production or surrender of the bond or note and mortgage, as the case may be. Furthermore a creditor does not have standing in court without an original promissory note in their possession. See Restatement, Contracts S 170(3), (4) (1932); C.J.S. Mortgages S 469 in <u>Carnegie Bank v Shalleck</u> 256 N.J. Super 23 (App. Div 1992), the Appellate Division held; "When the underlying mortgage is evidenced by an instrument meeting the criteria for negotiability set forth in N.J.S. 12A:3-104, the holder of the instrument shall be afforded all the rights and protections provided a holder in due course pursuant to N.J.S. 12A:3-302" Since no one is able to produce the "instrument" there is no competent evidence that any party is the holder of the alleged

note or the true holder in due course. New Jersey common law dictates that the plaintiff prove the existence of the alleged note in question, prove that the party sued signed the alleged note, prove that the plaintiff is the owner and holder of the alleged note, and prove that a certain balance is due and owing on any alleged note." Please note that in order to show standing in court a creditor has to bring forward an original promissory note. Federal Circuit Courts have ruled that the only way to prove the perfection of any security is by actual possession of the security. See Matter of Staff Mortg. & Inv. Corp., 550 F.2d 1228 (9th Cir 1977), Under the Uniform Commercial Code, the only notice sufficient to inform all interested parties that a security interest in instruments has been perfected is actual possession by the secured party, his agent or bailee. Bankruptcy Courts have followed the Uniform Commercial Code. In Re Investors & Lenders, Ltd. 165 B.R. 389 (Bkrtcy.D.N.J.1994), Under the New Jersey Uniform Commercial Code (NJUCC), promissory note is "instrument," security interest in which must be perfected by possession.

To prove damages in foreclosure of a debt, party must enter the account and general ledger statement into the record through a competent fact witness. To prove up claim of damages, the foreclosing party must enter evidence incorporating records such as a general ledger and accounting of an alleged unpaid promissory note, the person responsible for preparing and maintaining the account general ledger must provide a complete accounting which must be sworn to and dated by the person who maintained the ledger. See Pacific Concrete F.C.U. V. Kauanoe, 62 Haw. 334, 614 P.2d 936 (1980), GE Capital Hawaii, Inc. v. Yonenaka, 25 P.3d 807, 96 Hawaii 32, (Hawaii App 2001), Fooks v. Norwich Housing Authority, 28 Conn. L. Rptr. 371, (Conn. Super.2000), and Town of Brookfield v. Candlewood Shores Estates, Inc., 513 A.2d 1218, 201 Conn.1 (1986). See also Solon v. Godbole, 163 Ill. App. 3d 845, 114 Il.

I will pay the entire amount of money that you say is due to you in full if you can (1.) validate the debt; (2.) demonstrate that you are requesting payment of debt in legal tender that conforms to the requirements under all provisions of the US Constitution; and (3.) meet all of the requirements set forth in my offer of performance set forth above. Your failure to satisfy this request in accordance with the requirements of the Fair Debt Collection Practices Act will be construed to be an absolute waiver of any and all claims against me, and your tacit agreement to compensate me for costs and attorney fees. Please complete the creditor form attached.

Signature_____
       TERRY WALTER CONANT


Copy to:
Consumer Response Center
Federal Trade Commission

Washington, D.C. 20580

Name and Address of Collector (assignee)

WELLS FARGO BANK, NA
Loss-Mitigation Department
2671 College Park
Scottsbluff NE, 69361

Debtor:
TERRY WALTER CONANT
2191 Lindenwood Drive
South Lake Tahoe, CA 96150-5140

Account Number(s): 0046373957
What are the terms of assignment for this account? You may attach a facsimile of any records relating to such terms.

Have any insurance claims been made by any creditor or assignee regarding this account?

What happened to the consideration I deposited with the bank for the extension of the credit?

Has the purported balance of this account been used in any tax deduction claim?

Please list the particular products or services sold by the collector to the debtor and dollar amount of each:

Upon failure or refusal of collector to validate this collection action, collector agrees to waive all claims against the debtor named herein and pay debtor for all costs and attorney fees involved in defending this collection action.

Authorized signature of collector:                    Date:

Please return this completed form and attach all assignment or other transfer agreements that would establish you right to collect this debt. Your claim cannot be considered if any portion of this form is not completed and returned with the required documents. This is a request for validation of the debt made pursuant to the Fair Debt Collection Practices Act. If you do not respond as required by law, your claim will not be considered and you may be liable for damages for continued collection efforts. Please allow thirty (30) days for processing after your request.

3/20/13
This was the
QWR papers

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To Wells Fargo
Street, Apt. No.; or PO Box No. 2621 College Park
City, State, ZIP+4 Scottsbluff, NE 69361

7011 1570 0000 8503 4392

PS Form 3800, August 2006        See Reverse for Instructions

CERTIFIED MAIL™
PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To Wells Fargo Bank NA
Street, Apt. No.; or PO Box No. 10350 Park Meadow Drive
City, State, ZIP+4 Littleton, Colorado 80124

7011 1570 0000 8503 4408

PS Form 3800, August 2006        See Reverse for Instructions

CERTIFIED MAIL™
PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To AFRCT
Street, Apt. No.; or PO Box No. 199 So. Los Robles Avenue, Suite 600
City, State, ZIP+4 Pasadena, CA. 91101-2459

7011 1570 0000 8503 4415

PS Form 3800, August 2006        See Reverse for Instructions

CERTIFIED MAIL™
PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

# ■ AFRCT

### ATTORNEYS

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP
199 South Los Robles Avenue, Suite 600
Pasadena, California 91101-2459
tel: 626.535.1900
fax: 626.577.7764
www.afrct.com

Tim G. Ceperley
EMail:  tceperley@afrct.com

April 1, 2013

Via Norco Overnight

Terry Conant
2191 Lindenwood Dr.
So. Lake Tahoe, CA 96150

Re:   *Conant v. Wells Fargo Bank, NA*
       EDCSC, Case No.:  SC20120220

Dear Mr. Conant:

        This will acknowledge our receipt of two documents entitled RESPA, Qualified Request and Qualified Request Specific to one item.  Please be advise that we have forwarded these documents to our client.  However, since you have dismissed your action against Wells Fargo Bank N.A. ("Wells Fargo"), unless otherwise directed,  this firm will not be involved in responding further with respect to those matters.

                                        Very truly yours,

                                        ANGLIN, FLEWELLING, RASMUSSEN,
                                        CAMPBELL & TRYTTEN LLP

                                        Tim G. Ceperley

TGC:lac

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B.

Southland Title Corporation

**RECORDING REQUESTED BY:**
**WORLD SAVINGS BANK**

**WHEN RECORDED MAIL TO:**
**WORLD SAVINGS BANK**
**FINAL DOCUMENTATION**
**CLOSING DEPARTMENT**
**P.O. BOX 659548**
**SAN ANTONIO, TX 78265-9548**

**LOAN NUMBER: 0046373957**

**NOTE AMOUNT: $820,000.00**

*7750125*

El Dorado, County Recorder
William Schultz Co Recorder Office
**DOC- 2007-0054920-00**
Check Number 30310
Thursday, AUG 23, 2007 10:34:48
Ttl Pd $50.00    Nbr-0001017512
JLR/C1/1-18

**FOR RECORDER'S USE ONLY**

## DEED OF TRUST

**THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY PAYMENT AMOUNT AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED.**

**THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $1,025,000.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.**

I. **DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST**
(A) **Security Instrument.** This Deed of Trust, which is dated **August 16, 2007**, will be called the "Security Instrument."

(B) **Borrower. TERRY CONANT, AN UNMARRIED MAN** sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C) **Lender. WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES,** will be called "Lender." Lender is a **FEDERAL SAVINGS BANK,** which is organized and exists under the laws of the United States. Lender's address is **1901 Harrison Street, Oakland, CA 94612** .

0 0 3
**LENDER'S USE ONLY**

SD001A (2004-03-3)
DEFERRED INTEREST                    Page 1        CA

054920

0046373957

(D) Note. The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. **$820,000.00**, plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by September 1, 2037 ("Maturity Date").

(E) Property. The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

(F) Sums Secured. The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

(G) Person. Any person, organization, governmental authority or other party will be called "Person."

(H) Trustor, Beneficiary, Trustee. Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee."

## II.   BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)     pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)     pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)     keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III.   DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below:

(i)     The Property which is located at **2191 LINDENWOOD DR, SOUTH LAKE TAHOE, CA 96150-5140**. The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)     All buildings and other improvements that are located on the Described Property;

054920

0046373957

(iii)   All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)   All rents or royalties and other income from the Described Property;

(v)   All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)   All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)   All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)   All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)   All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)   All of the amounts that I pay to Lender under Paragraph 2 below.

## IV.   BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

### COVENANTS

I promise and I agree with Lender as follows:

## 1.   BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

## 2.   PAYMENTS FOR TAXES AND INSURANCE

### (A)   Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

SD001C (2004-03-3)

CA

054920

0046373957

**(B)     Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

054920

0046373957

**3.     APPLICATION OF BORROWER'S PAYMENTS**
        Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

> First, to pay prepayment charges due under the Secured Notes;

> Second, to pay any advances due to Lender under this Security Instrument;

> Third, to pay the amounts due to Lender under Paragraph 2 above;

> Fourth, to pay interest due under the Secured Notes;

> Fifth, to pay deferred interest due under the Secured Notes;

> Sixth, to pay principal due under the Secured Notes;

> Last, to pay late charges due under the Secured Notes.

**4.     BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**
        I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

        I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

        Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a lien. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5.     BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**
        At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

054920

0046373957

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

6.   **BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

054920

0046373957

7. **LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

8. **LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

9. **AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY**

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

054920

0046373957

10.   **CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

   **(A)   Borrower's Obligations**

   Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

   Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

   **(B)   Lender's Rights**

   Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

11.   **OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

   Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

   Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

   Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

12.   **MAXIMUM LOAN CHARGES**

   If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits; and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

SD001H (2004-03-3)

CA

054920

0046373957

### 13.   LEGISLATION AFFECTING LENDER'S RIGHTS

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

### 14.   NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at 2191 LINDENWOOD DR, SOUTH LAKE TAHOE, CA  96150-6140. A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

### 15.   GOVERNING LAW; SEVERABILITY

This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located. In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

### 16.   BORROWER'S COPY

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

### 17.   LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

054920

0046373957

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

## 18. INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

## 19. CLERICAL ERRORS

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

## 20. LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

## 21. WAIVER OF STATUTE OF LIMITATIONS

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

## 22. CAPTIONS

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

## 23. MODIFICATION

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

## 24. CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

(A) If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

SD001J (2004-03-3)

CA

054920

0046373957

**(B)**    The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

**(C)**    If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a master or blanket policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such master or blanket policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such master or blanket policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

**(D)**    I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the master or blanket hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

## 25.    FUTURE ADVANCES

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

SD001K (2004-03-3)    CA

**054920**

0046373957

26.    **AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment
in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the
Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option,
require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is
sold or transferred without Lender's prior written permission. However, Lender shall not require immediate
payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of
acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or
thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on
me.

**THIS SPACE INTENTIONALLY LEFT BLANK.**

27.    **SUBSTITUTION OF TRUSTEE**

I agree that Lender may at any time appoint a successor trustee and that Person shall become the
Trustee under this Security Instrument as if originally named as Trustee.

SD001L (2004-03-3)     [L01 (2006-08-1)]                                                                CA

054920

0046373957

### 28.  RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

### 29.  RECONVEYANCE

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

### 30.  STATEMENT OF OBLIGATION

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

054920

0046373957

31.     ( X )   QUICK QUALIFYING LOAN PROGRAM

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate.

32.     ( X )   OWNER OCCUPANCY

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate.

( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.

THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.

054920

0046373957

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

**BORROWER(S):**

_Terry Conant_                              (Seal)

TERRY CONANT

**ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT**

054920

## ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _El Dorado_ } ss.

On _Aug. 17, 2007_ before me, _Lisa Robbin Huard, a Notary Public_
(DATE)                                          (NOTARY)
personally appeared _Terry Conant_
                                          SIGNER(S)

☐ personally known to me   - OR -   ☑ proved to me  on the basis of satisfactory
evidence to be the person(s) whose name(s)
is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed
the same in his/her/their authorized
capacity(ies), and that by his/her/their
signatures(s) on the instrument the person(s),
or the entity upon behalf of which the
person(s) acted, executed the instrument.

[SEAL: LISA ROBBIN HUARD
COMM. # 1606008
NOTARY PUBLIC-CALIFORNIA
El Dorado County
My Comm. Exp. Sept. 28, 2009]

WITNESS my hand and official seal.

_Lisa Robbin Huard_
NOTARY'S SIGNATURE

━━━━━━━ ■ **OPTIONAL INFORMATION** ■ ━━━━━━━
The information below is not required by law. However, it could prevent fraudulent attachment of this acknowl-
edgment to an unauthorized document.

**CAPACITY CLAIMED BY SIGNER (PRINCIPAL)**      **DESCRIPTION OF ATTACHED DOCUMENT**

☐ INDIVIDUAL
☐ CORPORATE OFFICER                              _Deed of Trust_
                                                 TITLE OR TYPE OF DOCUMENT
_____
        TITLE(S)                                 _15_
☐ PARTNER(S)                                     NUMBER OF PAGES
☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)                                     _____
☐ GUARDIAN/CONSERVATOR                           DATE OF DOCUMENT
☐ OTHER: _____
_____
_____                         _____
                                                 OTHER

**SIGNER IS REPRESENTING:**          **RIGHT THUMBPRINT**
NAME OF PERSON(S) OR ENTITY(IES)           **OF**
                                        **SIGNER**
_____
_____

APA 5/99                    VALLEY-SIERRA, 800-362-3369

054920

**WORLD SAVINGS BANK, FSB**

# E X H I B I T "A"
## LEGAL DESCRIPTION

**LOAN NO. 0046373957**

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF **EL DORADO** STATE OF **CALIFORNIA**, DESCRIBED AS FOLLOWS:

**TAPE <u>ONLY</u> THE LEGAL DESCRIPTION TO THIS PAGE.**

054920

**EXHIBIT "A"**

Lot 79, as shown on the map entitled, "Sierra Park Subdivision Unit No. 2", in the County of El Dorado, State of California, filed on October 13, 1961, Book C of Maps, Page 83, in the Office of the County Recorder of the County of El Dorado.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT C.

OCT-05-2009  15:10        A    , LLP                           626 577 7764    P.01

# ■ AFRCT

### ATTORNEYS

ANGLIN, FLEWELLING, RASMUSSEN, CAMPBELL & TRYTTEN LLP
199 South Los Robles Avenue, Suite 600
Pasadena, California 91101-2459
tel: 626.535.1900
fax: 626.577.7764
www.afrct.com

## TELECOPIER COVER SHEET

DATE:        October 5, 2009

TO:        Nanci Webster

FAX NO.:        (951) 346-3470

RE:        *Webster  v. Wachovia Mortgage*

FROM:        Lynette Gridiron Webster, Esq.

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET:  _16_

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE CALL BACK AS SOON
AS POSSIBLE AT (626) 535-1900.  ASK FOR JILL ASHLEY.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SPECIAL INSTRUCTIONS/REMARKS:

**Facsimile service of:**

**REPLY OF DEFENDANT WACHOVIA MORTGAGE, FSB IN SUPPORT
OF ITS MOTION TO EXPUNGE LIS PENDENS AND MECHANIC'S
LIEN; DECLARATION OF LYNETTE GRIDIRON WINSTON**

**A copy will also be served via overnight delivery.**

This FAX is intended only for the use of the individual or entity to which it is addressed, and may contain information
that is privileged, confidential and exempt from disclosures under the applicable law.  If you are not the intended
recipient, any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received
this communication in error, please notify us immediately by telephone and return the original.

1  Christopher A. Carr  (#44444)
   ccarr@afrct.com
2  Lynette Gridiron Winston (#151003)
   lwinston@afrct.com
3  ANGLIN, FLEWELLING, RASMUSSEN,
      CAMPBELL & TRYTTEN LLP
4  199 S. Los Robles Avenue, Suite 600
   Pasadena, California 91101-2459
5  Tel: (626) 535-1900; Fax: (626) 577-7764

6  Attorneys for Defendant
   WACHOVIA MORTGAGE, FSB, f/k/a
7  WORLD SAVINGS BANK, FSB,
   erroneously sued as Wells Fargo Bank,
8  fka Wachovia Mortgage fka World Savings

9

10                SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                     FOR THE COUNTY OF RIVERSIDE

12  RICHARD WEBSTER AND NANCI         )  Case No. RIC 527237
    WEBSTER,                          )
13                                    )  [Assigned to the Hon. Mark E. Johnson,
                  Plaintiffs,         )  Dept. 05 for all purposes]
14                                    )
15       vs.                          )  REPLY OF DEFENDANT WACHOVIA
                                      )  MORTGAGE, FSB IN SUPPORT OF ITS
16  WELLS FARGO BANK, FKA WACHOVIA )  MOTION TO EXPUNGE LIS PENDENS AND
    MORTGAGE, FKA WORLD SAVINGS,      )  MECHANIC'S LIEN; DECLARATION OF
17  CAL-WESTERN RECONVEYANCE          )  LYNETTE GRIDIRON WINSTON
    CORP., AS TRUSTEE, and DOES 1 through )
18  20, INCLUSIVE,                    )  Date:  October 14, 2009
                                      )  Time: 8:30 a.m.
19                Defendants.         )  Dept.  05
20

21  TO PLAINTIFFS:

22       Defendant Wachovia Mortgage FSB, formerly known as World Savings Bank, FSB,

23  erroneously sued as "Wells Fargo Bank, fka Wachovia Mortgage, fka World Savings" (hereinafter

24  "Wachovia"), respectfully submits its reply in support of its previously filed Motion to Expunge

25  Notice of Pendency of Action and Mechanic's Lien:

26       1.  THE NOTICE OF PENDENCY OF ACTION SHOULD BE EXPUNGED

27       Plaintiffs' opposition does not raise any issues that would warrant denying Wachovia's

28  motion to expunge the notice of pendency of action and the mechanic's lien.  The Opposition does

1    not address either of the two reasons advanced by Wachovia in support of its motion; namely, (a)

2    the complaint does not state a "real property claim" within the meaning of CCP § 405.31, and (b)

3    plaintiffs can not demonstrate the "probable validity" of any (supposed) real property claim within

4    the meaning of CCP § 405.32. Rather, the Opposition seems to focus entirely on the contention

5    that Wachovia did not have standing to foreclose because it did not produce the original note.

6              Plaintiffs cite numerous federal authority in support of their contention that Wachovia is

7    required to produce the original note. (Opp. ¶¶6, 7, pp.3:12-4:15). However, these cases held that

8    the secured party **must take actual possession** of the security instrument (e.g. Note and/or Deed of

9    Trust) **in order to perfect the security instrument.** *See, e.g., In re Staff Mrtg. & Inv. Corp.*, 550

10   F.2d 1228, 1230 (9th Cir. 1977) ("California Commercial Code § 9304(1) states: "A security

11   interest in chattel paper or negotiable documents may be perfected by filing. A security interest in

12   instruments . . . can be perfected only by the secured party's taking possession, . . ." (emphasis

13   added)) (cited in Opp. pp. 1:22, 3:17, 28, 4:1, 9).

14             In *Bear v. Coben (In re Golden Plan of Cal., Inc.)*, 829 F.2d 705, 709 (9th Cir. 1986) (cited

15   in Opp. p.4:9) the court noted:

16             In Huffman v. Wikle (In re Staff Mortgage & Investment Corp.), 550 F.2d
                 1228 (9th Cir. 1977) ("Huffman"), and Greiner v. Wilke (In re Staff
17             Mortgage & Investment Corp.), 625 F.2d 281 (9th Cir. 1980) ("Staff"),
                 this court held that: 1) collateral notes and trust deeds are "instruments" for
18             the purposes of Division 9; and 2) the failure to take actual possession of
                 these instruments by the secured party caused the security interests to be
19             unperfected. See Huffman, 550 F.2d at 1230-31; Staff, 625 F.2d at 283.

20

21             Thus, these cases only held that the secured creditor must take possession of the security

22   instrument in order to perfect such instrument.  The security instrument cannot be left in the

23   possession of the debtor.  Here, plaintiffs have not alleged, nor can they allege, that World Savings

24   Bank did not take possession of the Note and Deed of Trust, but instead left such documents in

25   plaintiffs' possession.

26             Plaintiffs do not contend that the Note and Deed of Trust were not perfected, they simply

27   contend that Wachovia did not produce the original note and therefore lacks standing to foreclose.

28   However, as briefed in the Motion, there is no requirement that Wachovia provide the original

REPLY OF DEFENDANT WACHOVIA MORTGAGE, FSB IN SUPPORT OF MOTION TO EXPUNGE

OCT-05-2009  15:11       A  T, LLP                    626 577 7764    P.04

1   note prior to the foreclosure sale. "Cal. Civ. Code § 2924 outlines the requirements for

2   nonjudicial foreclosures in California, and does not include providing the original note prior to the

3   sale. Additionally, under California law, an 'allegation that the trustee did not have the original

4   note or had not received it is insufficient to render the foreclosure proceeding invalid.'" *Quintos*

5   *v. Decision One Mortg. Co., LLC*, 2008 U.S. Dist. LEXIS 104503, *7 (S.D. Cal. 2008) (Court

6   rejected a similar contention that defendants lacked standing to foreclose because they failed to

7   disclose the loan ownership status); *Cal. Trust Co. v. Smead Inv. Co.*, 6 Cal.App.2d 432, 435

8   (1935). Thus, plaintiffs have no basis for challenging the foreclosure sale that took place on May

9   22, 2009 and no basis for defeating this motion to expunge.

10      Moreover, in a showing of good faith, Wachovia hereby provides a copy of the Original

11   Note signed by plaintiff Richard Webster, and will produce the Original Note at the hearing on

12   this motion. (Declaration of Lynette Gridiron Winston ¶2, Exh. A).

13      Finally, Wachovia instituted non-judicial foreclosure proceedings. (See Wachovia's

14   previously filed Request for Judicial Notice In Support of Motion to Expunge, Exhs. B-D). Thus,

15   there is no requirement that Wachovia obtain a court order prior to holding a foreclosure sale.

16      2.  THE MECHANICS LIEN IS UNENFORCEABLE AND SHOULD BE EXPUNGED

17      Plaintiffs' opposition does not dispute any of the issues raised by Wachovia to expunge the

18   mechanic's lien recorded by plaintiff Richard Webster. Thus, plaintiffs concede that the

19   mechanic's lien should be expunged.

20               3.  CONCLUSION

21      In short, plaintiffs have totally failed to carry their burden of proof on establishing any real

22   property claim or the probable validity of such claim, even if one assumes they have stated a real

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

REPLY OF DEFENDANT WACHOVIA MORTGAGE, FSB IN SUPPORT OF MOTION TO EXPUNGE

OCT-05-2009  15:11        A   , LLP                          626 577 7764    P.05

1 | property claim in the first place.  For the foregoing reasons, Wachovia requests an order expunging

2 | the *Lis Pendens* and the Mechanic's Lien and an order for $2,520.00 in attorneys' fees.

3 |                              Respectfully submitted,

4 | Dated: October 5, 2009          ANGLIN, FLEWELLING, RASMUSSEN,
                                    CAMPBELL & TRYTTEN LLP
5 |

6 |                              By: _Lynette Gridiron Winston_

7 |                              Lynette Gridiron Winston
                                Attorneys for Defendant
8 |                              WACHOVIA MORTGAGE, FSB, f/k/a WORLD
                                SAVINGS BANK, FSB, erroneously sued as Wells
9 |                              Fargo Bank, fka Wachovia Mortgage fka World
                                Savings
10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

1    DECLARATION OF LYNETTE GRIDIRON WINSTON

2

3        I, Lynette Gridiron Winston, declare:

4        1.        I am an attorney at law licensed to practice before this Court and am employed by

5    the law firm of Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, counsel for defendant

6    Wachovia Mortgage FSB, formerly known as World Savings Bank, FSB, erroneously named as

7    Wells Fargo Bank, fka Wachovia Mortgage, fka World Savings ("Wachovia"). I make this

8    declaration in support of Wachovia's reply in support of its motion to expunge the *Lis Pendens* and

9    Mechanic's Lien recorded by plaintiffs Richard Webster and Nanci Webster against real property

10   commonly described as 2058 Dove Court, Corona, California 92882 (the "Property"). I have

11   personal knowledge of the matters set forth below.

12       2.        Attached hereto as Exhibit A is a true and correct copy of the original Adjustable

13   Rate Mortgage Note, dated November 22, 2005 and signed by plaintiff Richard Webster. I will

14   produce the original Note at the hearing on this motion. I received the Note from Wachovia in the

15   course of our representation of it in this action.

16       I declare under penalty of perjury of the laws of the State of California that the foregoing is

17   true and correct. If called on to testify to the foregoing, I would and could competently testify

18   thereto.

19       Executed this 5th day of October, 2009, at Pasadena, California.

20

21                                              _Lynette Gridiron Winston_

22                                              Lynette Gridiron Winston

23

24

25

26

27

28

OCT-05-2009  15:11        AF   ∴ LLP                          626 577 7764    P.07

# EXHIBIT A

OCT-05-2009  15:11        AF  ; LLP                                   626 577 7764    P.08



DEC
Teresa

## BEGINNING OF BATCH
## FOR LOAN

## HEADER SHEET FOR

## LOAN NUMBER:

0041466525

RICHARD WEBSTER

Received
NOV 29 2005
Jodi Linkmeyer

DEC 0 9 2005
Patricia Banda

# ATTENTION CLOSING AGENT,
# PLEASE RETURN THIS DOCUMENT
# WITH THE PACKAGE OF SIGNED
# DOCUMENTS REFERRED TO ON
# THE CLOSING INSTRUCTIONS
# PAGE 2, ITEM 9.

## IMAGING

NOV 29 2005

MATTHEW GUTIERREZ



0 0 4 1 4 6 6 5 2 5

GF460A (2003-03-1)

OCT-05-2009  15:12        AF   ∴ LLP                        626 577 7764     P.09

WORLD SAVINGS BANK, FSB

# ADJUSTABLE RATE MORTGAGE NOTE

## PICK-A-PAYMENT LOAN

### GDW AVERAGE DEPOSIT ACCOUNT RATE (COST OF SAVINGS) INDEX

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT
AND MY UNPAID PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES, MY INTEREST RATE INCREASES
AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT
OF THE SAME DATE.

LOAN NUMBER: 0041466525                         DATE: **November 22, 2005**

BORROWER(S):  RICHARD WEBSTER, A MARRIED MAN  sometimes called "Borrower" and sometimes simply called "I" or
"me."

PROPERTY ADDRESS: **2058 DOVE CT, CORONA, CA 92882-3773**

**1.  BORROWER'S PROMISE TO PAY**
    In return for a loan that I have received, I promise to pay U.S. **$432,800.00** , called "Principal," plus interest, to the order of the
Lender. The Lender is **WORLD SAVINGS BANK, FSB, a FEDERAL SAVINGS BANK,, ITS SUCCESSORS AND/OR
ASSIGNEES,** or anyone to whom this Note is transferred.

**2.  INTEREST**

    **(A)   Interest Rate**
    Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at the yearly rate of
**6.370%.** The interest rate I will pay  may change as described in this Section 2.  Interest will be charged on the basis of a twelve
month year and a thirty day month.

     The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of
this Note.

    **(B)   Interest Change Dates**
    The interest rate I will pay may change on the **15th** day of **January, 2006** and on the same day every month thereafter. Each
date on which my interest rate could change is called an "Interest Change Date." The new rate of interest will become effective on
each Interest Change Date.

    **(C)   Interest Rate Limit**
    My lifetime maximum interest rate limit is **11.950%,** called "Lifetime Rate Cap."



LENDER'S USE ONLY

0041466525

**(D)  Index**

Beginning with the first Interest Change Date, my interest rate will be based on an "Index." The index is the weighted average of the interest rates in effect as of the last day of each calendar month on the deposit accounts of the federally insured depository institution subsidiaries ("Subsidiaries") of Golden West Financial Corporation ("GDW"), as made available by GDW. Included in the deposit accounts for purposes of the Index calculation are all of the items and adjustments that GDW uses to calculate the line item currently called "cost of deposits" that appears in its quarterly and annual reports to shareholders as well as in other financial reports publicly distributed by GDW. The Index does not include deposit accounts owned by GDW or its Subsidiaries or other affiliates. The calculation of the Index includes adjustments for the effects of financial instruments related to the deposit accounts and other adjustments determined by GDW in its sole discretion as appropriate to accurately reflect the weighted average of interest rates on the deposit accounts. If an index is substituted as described in Section 2(F) of this Note, the alternative index will become the Index. The most recent Index figure available on each Interest Change Date is called the "Current Index."

**(E)  Calculation of Interest Rate Changes**

Lender will calculate my new interest rate by adding **3.400** percentage points, called the "Margin," to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this calculation will be my new interest rate until the next Interest Change Date.

If Lender fails to utilize the entire interest rate increase to which it is entitled under this Note on any Interest Change Date by failing to add all or part of the allowable Margin to the Current Index, then Lender may add any such allowable Margin to the Current Index on any future Interest Change Date. Lender may not, at a later date, "carryover" or add interest to which it is not entitled under this Note on any Interest Change Date.

**(F)  Alternative Index**

The Lender may choose an alternative index to be the Index if the Index is no longer available. For purposes of this Section 2(F) the Index is not "available" if: (a) the Index is for any reason no longer published; or (b) the Lender, in its sole discretion, determines that the Index is calculated in a substantially different manner or based on substantially different information than at the time the index became applicable to this Note; or (c) applicable laws or regulations prevent the Lender from using the Index to calculate interest under this Note. The selection of the alternative index shall be at Lender's sole discretion. The alternative index may be a national or regional index or another type of index approved by the Lender's primary regulator. The Lender will give me notice of the alternative index.

## 3.  PAYMENTS

**(A)  Time and Place of Payments**

I will pay Principal and interest by making payments every month.

I will make my monthly payments on the **15th** day of each month beginning on **January 15, 2006**. I will make these payments every month until I have paid (i) all the Principal and interest; and (ii) any other charges described below that I may owe under this Note; and (iii) any charges that may be due under the Security Instrument. If, on **December 15, 2035**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612** or at a different place if required by notice from the Lender.

**(B)  Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ **1,643.35**. This amount will change as described in Sections 3(C) and 3(D) below. My initial monthly payment amount was selected by me from a range of initial payment amounts approved by Lender and may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance.

**(C)  Payment Change Dates**

My monthly payment will change as required by Section 3(D) below beginning on the **15th** day of **January, 2007** and on that day every **12th** month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Section 3(F) or 3(G) below require me to pay a different amount.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date and as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Payment Changes**

Subject to Sections 3(F) and 3(G), on the Payment Change Date my monthly payment may be changed to an amount sufficient to pay the unpaid principal balance, including any deferred interest as described in Section 3(E) below, by the Maturity Date. However, the amount by which my payment can be increased will not be more than 7-1/2% of the then existing Principal and interest payment. This 7-1/2% limitation is called the "Payment Cap." The Lender will perform this Payment Change calculation at least 60 but not more than 90 days before the Payment Change Date.

0041466525

**(E)  Deferred Interest; Additions to My Unpaid Principal**

From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal balance can never exceed 125% of the Principal I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment. Notwithstanding Sections 3(C) and 3(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments.

**(G)  Payment Cap Limitation; Exceptions**

Beginning with the 10th Payment Change Date and every 5th Payment Change Date thereafter, my monthly payment will be calculated as described in Section 3(D) above except that the Payment Cap limitation will not apply. Additionally, the Payment Cap limitation will not apply on the final Payment Change Date.

**(H)  Notice of Payment Changes**

The Lender will deliver or mail to me a notice of any changes in the amount of my monthly payment, called "Payment Change Notice," before each Payment Change Date. The Payment Change Notice will include information required by law.

**4.  FAILURE TO MAKE ADJUSTMENTS**

If for any reason Lender fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as if they had been made on time. I also agree not to hold Lender responsible for any damages to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

**5.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal before it is due is called a "Prepayment". When I make a Prepayment, I will tell the Lender in writing that I am doing so. The Lender may require that any partial Prepayments be made on the date my regularly scheduled payments are due. If I make a partial Prepayment, there will be no changes in the due dates or amount of my regularly scheduled payments unless the Lender agrees to those changes in writing. I may pay deferred interest on this Note at any time without charge and such payment will not be considered a "Prepayment" of Principal. During the first 3 years of the loan term if I make one or more Prepayments that, in the aggregate, exceed $5,000 in any calendar month, I must pay a prepayment charge equal to 2% of the amount such Prepayments exceed $5,000 in that calendar month. After the first 3 years of the loan term, I may make a full or partial Prepayment without paying any prepayment charge.

**6.  MAXIMUM LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)  Late Charges for Overdue Payments**

If the Lender has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Lender. The amount of the charge will be 5.00% of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

OCT-05-2009  15:13        AL _T, LLP                          626 577 7764        P.12

0041466525

**(B)  Default**

I will be in default if (i) I do not pay the full amount of each monthly payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under this Note or the Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading.

**(C)  Notice of Default**

If I am in default, the Lender may send me a written notice, called "Notice of Default," telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount, plus any other amounts due under the Security Instrument.

**(D)  No Waiver by Lender**

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time.

**(E)  Payment of Lender's Costs and Expenses**

The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses may include, for example, reasonable attorneys' fees and court costs.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me or any Borrower at **2958 DOVE CT, CORONA, CA  92882--377**, or at a single alternative address if I give the Lender notice of my alternative address. I may give notice to Lender of a change in my address in writing or by calling Lender's customer service telephone number provided on my billing statement.  I may designate only one mailing address at a time for notification purposes.

Except as permitted above for changes of address, any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

**11.  SECURED NOTE - ACCELERATION**

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Lender security against which it may proceed if I do not keep the promises which I made in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note and includes the following Paragraph 26:

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

OCT-05-2009   15:13        A＊  ＊, LLP                         626 577 7764     P.13

0041466525

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)   Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)   Lender approves the creditworthiness of the transferee in writing;

(iii)   transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)   an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of Principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)   the transferee executes an assumption agreement which is satisfactory to Lender.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

**12.  GOVERNING LAW; SEVERABILITY**

This Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Note.

**13.  CLERICAL ERRORS**

In the event the Lender at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error.

**14.  LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

OCT-05-2009  15:13       A  , LLP                           626 577 7764     P.14

0041466525

**SIGNATURE PAGE**

NOTICE TO BORROWER(S):

BY SIGNING THIS NOTE YOU AGREE TO PAY A PREPAYMENT CHARGE IN CERTAIN CIRCUMSTANCES. PLEASE CAREFULLY READ THIS ENTIRE NOTE (INCLUDING THE PREPAYMENT PROVISION) BEFORE YOU SIGN IT.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____ (Seal)
RICHARD WEBSTER

OCT-05-2009  15:13        AF. Î, LLP                              626 577 7764    P.15

PAY TO THE ORDER OF
THE BANK OF NEW YORK

WORLD SAVINGS BANK
A FEDERAL SAVINGS

CANCELLED

BY:
NAME: CRAIG SWONSON
TITLE: CUSTODIAN OF RECORDS

OCT-05-2009  15:13      A  r, LLP                          626 577 7764    P.16

1                              PROOF OF SERVICE

2    STATE OF CALIFORNIA          )
                                  ) ss
3    COUNTY OF LOS ANGELES        )

4         I am employed in the County of Los Angeles, State of California.  I am over the age of 18
     and not a party to the within action; my business address is 199 S. Los Robles Avenue, Suite 600,
5    Pasadena, California 91101-2459.

6         On October 5, 2009, I served the foregoing document described as **REPLY OF
     DEFENDANT WACHOVIA MORTGAGE, FSB IN SUPPORT OF ITS MOTION TO
7    EXPUNGE LIS PENDENS AND MECHANIC'S LIEN; DECLARATION OF LYNETTE
     GRIDIRON WINSTON** on the interested parties in this action by placing a true copy thereof
8    enclosed in a sealed envelope addressed to:

9
                                    Richard Webster
10                                  Nanci Webster
                                 387 Magnolia Avenue
11                                Suite 103, Box 112
                                  Corona, CA 92879
12
13                              Fax:  (951)346-3470

14   [X]   **BY FAX - SENDING FACSIMILE PHONE NUMBER: 626-577-7764:** On October 5,
           2009, at _____ a.m./p.m., I served the foregoing document on all the interested parties in
15         this action by facsimile transmission to the facsimile machine telephone number as follows:
           **Nanci and Richard Webster, (951) 346-3470.**  STATEMENT OF FACSIMILE
16         TRANSMISSION. the document was transmitted by facsimile transmission and the
           transmission was reported as complete and without error.  A copy of the transmission
17         report, which was properly issued by the transmitting facsimile machine, is attached hereto.

18                                      **AND**

19
     [X]   **BY OVERNIGHT MAIL SERVICE:**  I am readily familiar with the firm's practice of
20         collection and processing correspondence by overnight mail.  Under that same practice it
           would be deposited with Overnight Express on that same day with charges made to our
21         account with that firm at Pasadena, California in the ordinary course of business.

22
     [X]   **STATE:**   I declare under penalty of perjury under the laws of the State of California that
23         the above is true and correct.

24   [ ]   FEDERAL:   I declare that I am employed in the offices of a member of this Court at
           whose direction the service was made.

25
           Executed on October 5, 2009, at Riverside, California.
26

27

28   _____Jill Ashley_____            _____
     (Print or Type Name)                (Signature of Declarant)

     J:\Docs\95451.170\Reply ISO Mtn to Expunge-178191.doc

                                                        TOTAL  P.16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT D.

Recording requested by:
**LSI Title Company**

When Recorded Mail To:
**NDEx West, L.L.C.**
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas 75001-9013**
**(866) 795-1852**

APN #: **035-143-09-100**
Property Address:
**2191 LINDENWOOD DR**
**SOUTH LAKE TAHOE, CALIFORNIA 96150**



NTSP20110015004096

Space above this line for Recorder's use only

Trustee Sale No.: **20110015004096**       Title Order No.: **110375666**       FHA/VA/PMI No.:

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 08/16/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

NDEx West, L.L.C., as duly appointed Trustee under and pursuant to Deed of Trust **Recorded on 08/23/2007 as Instrument No. 2007-0054920-00** of official records in the office of the County Recorder of **EL DORADO** County, State of CALIFORNIA.

**EXECUTED BY:       TERRY CONANT,**
WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by 2924h(b), (payable at time of sale in lawful money of the United States).
**DATE OF SALE:       04/11/2013       TIME OF SALE:       2:30 PM**
**PLACE OF SALE:      AT THE MAIN STREET ENTRANCE TO THE COUNTY COURTHOUSE, 495 MAIN STREET, PLACERVILLE, CA.**
STREET ADDRESS and other common designation, if any, of the real property described above is purported to be:
                   **2191 LINDENWOOD DR, SOUTH LAKE TAHOE, CALIFORNIA 96150**
APN#:              **035-143-09-100**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is **769,561.18**. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

Trustee Sale No. : **20110015004096**     Title Order No.: **110375666**     FHA/VA/PMI No.:



**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 714-730-2727 for information regarding the trustee's sale or visit this Internet Web site www.lpsasap.com for information regarding the sale of this property, using the file number assigned to this case 20110015004096. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

FOR TRUSTEE SALE INFORMATION PLEASE CALL:
**AGENCY SALES & POSTING**
**3210 EL CAMINO REAL, SUITE 200**
**IRVINE, CA 92602**
**714-730-2727**
**www.lpsasap.com**

**NDEx West, L.L.C. MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.   ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**NDEx West, L.L.C. as Trustee**

_____     Dated: **03/18/2013**