| | |
|---|---|
| TERRY WALTER CONANT, | |
| Plaintiff, | |
| v. | Civil Action No. 13-572 (CKK) |
| WELLS FARGO BANK, N.A., *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**
(July 25, 2014)

Plaintiff Terry Walter Conant ("Conant" or "Plaintiff") brings this action *pro se* challenging the foreclosure of his property. Presently before the Court is the portion of Defendant Wells Fargo Bank, N.A.'s [6] Motion to Dismiss Pursuant to Rule 12(b)(2), 12(b)(5) and 12(b)(6) or, in the Alternative, for Summary Judgment Pursuant to Rule 12(d) held in abeyance by this Court's previous Memorandum Opinion and Order, as well as Plaintiff's [59] Motion for Leave to File Plaintiff's Amendment to Plaintiff's Original Complaint. Upon consideration of the parties' submissions[1], the relevant legal authorities, and the record as a

---

[1] While the Court renders its decision on the record as a whole, its consideration has focused on the following documents: Petition for Declaratory and Injunctive Relief Pursuant to Title 28, US Code Section 2201, 2201, ECF No. [1] ("Compl."); Defs. Wells Fargo Bank, N.A. & Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP's Mot. to Dismiss Pursuant to Rule 12(b)(2), 12(b)(5) and 12(b)(6) or, in the Alternative, for Summ. J. Pursuant to Rule 12(d), ECF No. [6] ("Wells Fargo MTD"); Pl.'s Mot to Portray & Assert the Certified Securitization Audit, with Mem. Of Law, ECF No. [14] ("Pl.'s Mot. to Portray"); Opp'n of Defs. Wells Fargo Bank, N.A. and Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP to Pl.'s Motions Dated July 20, 2013, ECF No. [20] ("Def.'s Opp'n to Pl.'s Mot. to Portray"); Pl.'s Answer to Court's Order (July 31, 2013) and/or Mot. for Summ. J. to Dismiss, ECF No. [24] ("Pl.'s Opp'n to Wells Fargo & ASAP MTD"); Defs. Wells Fargo Bank, N.A.'s and Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP's Reply to Pl.'s "Answer to Court Order (July 31, 2013) and/or Mot. for Summ. J. to Dismiss", ECF No. [27] ("Wells Fargo Reply"); Def. Wells Fargo Bank, N.A.'s Suppl. Brief Re: "Securitization Report" and Intentional Infliction of Emotional Distress Claim,

whole, the Court issues the following rulings. The Court GRANTS the remainder of Defendant Wells Fargo Bank, N.A.'s [6] Motion to Dismiss Pursuant to Rule 12(b)(2), 12(b)(5) and 12(b)(6) or, in the Alternative, for Summary Judgment Pursuant to Rule 12(d). In addition, Plaintiff's [59] Motion for Leave to File Plaintiff's Amendment to Plaintiff's Original Complaint is DENIED. All other pending motions in this case are DENIED AS MOOT. Accordingly, this action is DISMISSED in its entirety.

# I. BACKGROUND

## A. Factual Background

In August 2007, Plaintiff borrowed $820,000.000 from World Savings Bank. Compl., Ex. B (Deed of Trust). This loan was documented by an Adjustable Rate Note and secured by a deed of trust on property located at 2191 Lindenwood Drive, South Lake Tahoe, California. *Id.* In December 2007, World Savings Bank changed its name to Wachovia Mortgage, FSB. Wells Fargo MTD, Ex. B (World Savings Bank, FSB, Oakland, California, Notice of Amendment of Charter and Bylaws). In November 2009, Wachovia Mortgage, FSB changed *its* name to Wells

---

ECF No. [49] ("Def.'s Suppl."); Pl.'s Mot. for Injunctive Relief in Compliance with the Order of this Honorable Court Issued on February 12th, 2014 Pursuant to Federal Rules of Civil Procedure Rule 65, ECF No. [50] ("Pl.'s Inj. Mot."); Def. Wells Fargo Bank, N.A.'s Suppl. Brief Re: Ownership of Deed of Trust in Resp. to Court's May 6, 2014 Order, ECF No. [54] ("Def.'s Further Suppl."); Pl.'s Reply to Def. Wells Fargo Bank, N.A.'s Suppl. Brief Re: Ownership of Deed of Trust in Resp. to Court's May 6, 2014 Order Copies of Note and Deed of Trust From Wells Fargo's Vault in Resp. to Court's May 6, 2014 Order, ECF No. [55] ("Pl.'s Further Suppl. Resp."); Pl.'s Am. Pl.'s Reply to Def. Wells Fargo Bank, N.A.'s Suppl. Brief Re: Ownership of Deed of Trust in Resp. to Court's May 6, 2014 Order Copies of Note and Deed of Trust From Wells Fargo's Vault in Resp. to Court's May 6, 2014 Order, ECF No. [56] ("Pl.'s Am. Further Suppl. Resp."); Pl.'s Resp. to Def. Wells Fargo Bank, N.A.'s Suppl. Brief Re: "Securitization Report" and Intentional Infliction of Emotional Distress Claim, ECF No. [57] ("Pl.'s Suppl. Resp."); Pl.'s Mot. for Leave to File Pl.'s Emergency Mot. for Temporary Restraining Order to Stop Sale of Real Property, ECF No. [58] ("Pl.'s TRO Mot."); Pl.'s Mot. for Leave to File Pl.'s Am. to Pl.'s Original Compl., ECF No. [59] ("Pl.'s Mot. to Am."); Pl.'s Am. to Pl.'s Original Compl., ECF No. [59-1] ("Pl.'s Proposed Am."); Pl.'s Mot. for Leave to File Pl.'s Addendum to Pl.'s Resp. to Def. Wells Fargo Bank, N.A.'s Suppl. Brief Re: "Securitization Report" and Intentional Infliction of Emotional Distress Claim, ECF No. [60] ("Pl.'s Add. Resp.").

Fargo Bank Southwest, N.A., and merged into Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant"). *Id.*, Ex. D (Application to convert Wachovia Mortgage, FSB, North Las Vegas, Nevada to a national bank and application to merge the converted bank with and into Wells Fargo Bank). In 2011, Plaintiff defaulted on his payments and Defendant Wells Fargo initiated non-judicial foreclosure proceedings. *Id.*, Ex. F (Notice of Default and Election to Sell Under Deed of Trust). In August 2011, the foreclosure trustee, NDeX West, recorded a Notice of Default with the El Dorado County Recorder's Office. *Id.* Plaintiff sought to delay this foreclosure with two prior court actions. First, Plaintiff filed a bankruptcy proceeding in the United States Bankruptcy Court for the Northern District of California. *See Conant v. Wells Fargo Bank, N.A.*, No. 12-25594-A-13J (Bankr. N.D. Cal.). This bankruptcy proceeding was dismissed on May 22, 2012. *Id.*, Ex. I (Order Closing Case Where Case Has Been Dismissed). Second, Plaintiff challenged Wells Fargo's right to foreclose in a civil action in California state court before the El Dorado County Superior Court. *See Conant v. Wells Fargo Bank, N.A.*, No. SC20120220 (Cal. Super. Ct.). This court sustained Wells Fargo's motion to dismiss but provided Plaintiff leave to amend. *Id.*, Ex. L (Order Sustaining Defendants' Demurrers, With Leave to Amend and Denying Application for a Temporary Restraining Order Without Prejudice). Plaintiff subsequently voluntarily dismissed this action. *Id.*, Ex. M (Request for Dismissal).

The parties are in dispute as to whether Wells Fargo is the owner of Plaintiff's mortgage and has the right to foreclose on his home. Plaintiff argues that the note associated with his mortgage has been securitized and sold on a secondary mortgage market. *See, e.g.,* Pl.'s Mot. to Portray at 1-2. As support for this position, Plaintiff relies on a "Property Securitization Analysis Report" prepared by a company called Mortgage Compliance Investigators. *Id.*, Ex. 2.

This document contains a sworn affidavit from an individual named Damion Emholtz who states that he has researched Plaintiff's loan and determined that "the loan is an asset in the WORLD SAVINGS BANK REMIC 30. My research also shows that the loan was current in its status as a performing asset in this pool of mortgage-backed securities prior to going into foreclosure." *Id.*, Ex. 2 at 16.

### B. Procedural History

Plaintiff filed the fifty-four page Complaint in this action on April 19, 2013, which generally challenged the propriety of the non-judicial foreclosure action against him by Defendant Wells Fargo and its agents. *See generally* Compl. Plaintiff seeks declaratory and injunctive relief to stop the foreclosure action against him, as well as monetary damages in the event his Complaint is opposed. Compl. at 47-50. Read liberally, Plaintiff's fifty-four page Complaint appears to allege the following claims. First, Plaintiff alleges that the Defendants are in violation of the Consent Judgment entered into by Wells Fargo and several other banks in *United States v. Bank of America Corp., et al.*, No. 12-0361 (D.D.C. Apr. 4, 2012). Second, Plaintiff alleges more generally that Wells Fargo is not the owner of his mortgage and is therefore improperly foreclosing on his home, in violation of various provisions of the Uniform Commercial Code. *Id.* at 11. Third, and relatedly, Plaintiff alleges that Wells Fargo's attempt at foreclosure constitutes fraud. *Id.* at 32. Fourth, Plaintiff alleges that this foreclosure process constitutes a deprivation of his due process rights. *Id.* at 37. Fifth, Plaintiff argues that in foreclosing on his home, Plaintiffs are in violation of the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692 *et seq.*[2] Sixth, Plaintiff alleges that the allegedly improper foreclosure process constitutes intentional infliction of emotional distress. Compl. at 37-38, 46.

Defendants Wells Fargo; Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP; LPS Agency Sales and Posting, Inc.; and NDeX West subsequently filed motions to dismiss, or in the alternative, motions for summary judgment. *See* Wells Fargo MTD; Def. LPS Agency Sales and Posting, Inc.'s Mot. to Dismiss Compl. & Incorporating Mem. of Law, ECF No. [9]; Def. NDeX West, LLC's Mot. to Dismiss or in the Alternative, for Summ. J., ECF No. [35]. In addition to several motions not relevant here, Plaintiff filed a [14] Motion to Portray and Assert the Certified Securitization Audit, with Memorandum of Law. In this filing, Plaintiff again asserted that Wells Fargo was not the owner of his loan, but rather that the loan was securitized and sold on the secondary mortgage securities market. Pl.'s Mot. to Portray at 1-2. This filing included as an exhibit the "Property Securitization Analysis Report" discussed above. In response to Plaintiff's filing, Defendants argued that Plaintiff's motion should be stricken as incomprehensible and irrelevant. Def.'s Opp'n to Pl.'s Mot. to Portray at 1-3.

By [44] Order and [45] Memorandum Opinion issued February 14, 2014, the Court significantly narrowed this case. The Court: (1) dismissed Defendant Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP without prejudice for lack of personal jurisdiction and failure to serve; (2) dismissed Defendant LPS Agency Sales and Posting, Inc. pursuant to Rule 12(b)(6); (3) dismissed Defendant NDeX West, LLC without prejudice for lack of personal jurisdiction; and (4) dismissed Defendants John Does 1-20 without prejudice for failure to serve. Order, ECF No. [44] at 1-2. With respect to Defendant Wells Fargo, the Court dismissed

---

[2] Plaintiff does not explicitly assert a cause of action for violation of the FDCPA. However, his Complaint does reference the statute and states that Defendants are in violation of its provisions in foreclosing on his home. Compl. at 28, 36.

Plaintiff's claims for violation of the Consent Decree in *United States v. Bank of America Corp.*, et al., No. 12-0361 (D.D.C. Apr. 4, 2012) and for violation of his due process rights. *Id.* at 1. However, after concluding that the "Property Securitization Analysis Report" attached to Plaintiff's [14] Motion to Portray and Assert the Certified Securitization Audit, with Memorandum of Law could be relevant in assessing Plaintiff's claims of wrongful foreclosure, violation of the FDCPA, and fraud against Defendant Wells Fargo, the Court decided to hold Defendant Wells Fargo's motion to dismiss in abeyance with respect to these claims. Accordingly, the Court ordered supplemental briefing from Defendant as to the relevance and reliability of the "Property Securitization Analysis Report." *Id.* at 1-2. In addition, given the length and vagueness of Plaintiff's Complaint, Defendant Wells Fargo had not appeared to recognize that Plaintiff was raising an intentional infliction of emotional distress claim, and had failed to respond to this claim in its motion to dismiss, or in the alternative, for summary judgment. *See* Mem. Op., ECF No. [45] at 26. Accordingly, the Court ordered Wells Fargo to also address this issue in its supplemental brief. Order, ECF No. [44] at 2.

In light of these rulings, the only remaining Defendant in this action is Wells Fargo and the only remaining claims against this Defendant are: (1) wrongful foreclosure, (2) violation of the FDCPA, (3) fraud, and (4) intentional infliction of emotional distress.

Defendant Wells Fargo subsequently filed its supplemental briefing and Plaintiff filed a reply. *See* Def.'s Suppl.; Pl.'s Suppl. Resp. Along with his reply, Plaintiff has attached an additional affidavit supporting his contention that his loan has been securitized. Pl.'s Suppl. Resp., Ex. 1 (Affidavit of William McCaffrey). This affidavit, from an individual named William McCaffrey states, *inter alia*, "The subject Mortgage loan was securitized and placed in a WORLD SAVINGS MORTGAGE PASS-THROUGH Real Estate Mortgage Conduit

('REMIC') TRUST Series 30 which was closed August 2007." *Id.* at 1. Because of additional questions regarding the parties' filings, the Court ordered a second round of supplemental briefing as to Plaintiff's securitization argument, and requested that Wells Fargo provide the Court with photocopies of the original deed of trust from its vault.[3] *See* Order, ECF No. [53].

Since this Court's last Memorandum Opinion, Plaintiff has filed a bevy of motions. Plaintiff first filed his [48] Second Motion for Order of Default Judgment, Damages, and Enforcement of the Consent Decree Terms and Conditions, Jointly and Severally Against the Defendants Wells Fargo Bank, N.A., Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP. By [47] Order issued February 24, 2014, the Court denied this motion to the extent it addressed claims against Defendant Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP and alleged a violation of the Consent Decree in *United States v. Bank of America Corp.*, et al., No. 12-0361 (D.D.C. Apr. 4, 2012), as these claims had already been dismissed, and held the motion in abeyance to the extent it addressed Defendant Wells Fargo's standing to foreclose on Plaintiff's home. Plaintiff has also filed a motion seeking leave to amend his Complaint, apparently to add additional factual allegations and claims. Pl.'s Mot. to Am. In addition, Plaintiff has filed motions seeking a preliminary injunction and a temporary restraining order against the sale of his property. Pl.'s Inj. Mot.; Pl.'s TRO Mot.

## II. LEGAL STANDARD

### A. Rule 56

---

[3] This Order further "advise[d] the parties that, upon reviewing these materials [to be provided by Defendant], [the Court] [would] likely set a date a date on which Defendant will be required to bring the original deed of trust to the Court for in-person review." Order, ECF No. [53] at 1. However, upon review of Defendant's second supplemental brief, the Court concludes that such action is unnecessary, because, for the reasons discussed *infra*, Plaintiff's claims are subject to dismissal as a matter of law.

Defendant Wells Fargo filed a motion seeking dismissal for failure to state a claim, or in the alternative, summary judgment. Pursuant to Fed. R. Civ. P. 12(d), "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003). Here, both parties have been provided the opportunity to submit materials outside of the pleadings in support of their positions. Accordingly, the Court will review Defendant's entire motion under the summary judgment standard, because "the [defendant's] motion[] [was] in the alternative for summary judgment and . . . the parties had the opportunity to submit and submitted materials in support and in opposition." *Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1273 n. 5 (D.C. Cir. 1997) (determining that it would not be "unfair" to treat such a motion as one for summary judgment).

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of his position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

**B. Rule 15**

Under the Federal Rules of Civil Procedure, a party may amend its pleadings once as a matter of course within a prescribed time period. *See* Fed. R. Civ. P. 15(a)(1). Where, as here, a party seeks to amend its pleadings outside that time period, it may do so only with the opposing party's written consent or the district court's leave. *See* Fed. R. Civ. P. 15(a)(2). The decision whether to grant leave to amend a complaint is entrusted to the sound discretion of the district court, but leave "should be freely given unless there is a good reason, such as futility, to the contrary." *Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996), *cert. denied*, 520 U.S. 1197 (1997). As the Supreme Court has observed:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). "[A] district court has discretion to deny a motion to amend on grounds of futility where the proposed pleading would not survive a motion to dismiss." *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 945 (D.C. Cir. 2004), *cert. denied*, 545 U.S. 1104 (2005). Review for futility is practically "identical to review of a Rule 12(b)(6) dismissal based on the allegations in the amended complaint." *In re Interbank Funding Corp. Secs. Litig.*, 629 F.3d 213, 215-16 (D.C. Cir. 2010) (quotation marks omitted).

### III. DISCUSSION

**A. Plaintiff's Remaining Claims**

As discussed, the only remaining Defendant in this suit is Wells Fargo. By its February 24, 2014 [45] Memorandum Opinion and [44] Order, the Court dismissed Plaintiff's claims against Defendant Wells Fargo pursuant to Rule 12(b)(6), except for Plaintiff's claims that Wells

Fargo: (1) lacks standing to foreclose on Plaintiff's mortgage, (2) has violated the Fair Debt Collection Practices Act, (3) has committed fraud, and (4) has committed intentional infliction of emotional distress. As to these claims, the Court requested supplemental briefing from Wells Fargo. In light of this supplemental briefing, as well as Plaintiff's reply, the Court concludes that all of these remaining claims should be dismissed for the reasons discussed below.

### 1. Lack of Standing to Foreclose

Plaintiff's Complaint, citing to various California statutes and provisions of the Uniform Commercial Code, alleges generally that Defendant Wells Fargo lacks standing to foreclose on his home because it does not have possession of Plaintiff's Note. *See, e.g.*, Compl. at 11 ("The question of ownership of the note is a vital part of determining who has the right to foreclose and sell the property."). Rather, Plaintiff alleges, his loan had been securitized and sold on a secondary mortgage market. As support for this position Plaintiff provided the Court with a "Property Securitization Analysis Report" prepared by a company called Mortgage Compliance Investigators. *Id.*, Ex. 2. This document contains a sworn affidavit from an individual named Damion Emholtz who states that he has researched Plaintiff's loan and determined that "the loan is an asset in the WORLD SAVINGS BANK REMIC 30. My research also shows that the loan was current in its status as a performing asset in this pool of mortgage-backed securities prior to going into foreclosure." Pl.'s Mot. to Portray, Ex. 2 at 16. Another subsequently provided affidavit from an individual named William McCaffrey similarly states, "The subject Mortgage loan was securitized and placed in a WORLD SAVINGS MORTGAGE PASS-THROUGH Real Estate Mortgage Conduit ('REMIC') TRUST Series 30 which was closed August 2007." Pl.'s Suppl. Resp., Ex. 1 at 1. Accordingly, Plaintiff contends that because Wells Fargo is a stranger to his loan, their efforts to foreclose are improper.

Because Wells Fargo filed its motion to dismiss before the Court granted Plaintiff leave to file the "Property Securitization Analysis Report", Wells Fargo's motion to dismiss filings did not seriously engage Plaintiff's securitization argument. Accordingly, holding in abeyance Plaintiff's wrongful foreclosure challenge, the Court ordered Wells Fargo to provide supplemental briefing addressing Plaintiff's securitization argument. The Court also permitted Plaintiff the opportunity to file a reply. In light of the parties' supplemental briefing on the securitization issue, the Court concludes that Plaintiff's wrongful foreclosure claims must be dismissed because securitization is ultimately irrelevant to Defendant's ability to foreclose.

As Defendant points out in its supplemental briefing, California courts have repeatedly and consistently rejected claims akin to Plaintiffs, arguing that securitization precludes a foreclosure action. *See, e.g., Preciado v. Wells Fargo Home Mortg.*, No. 13-00382 LB, 2013 WL 1899929, at *5 (N.D. Cal. May 7, 2013) ("the weight of persuasive authority in this district is that a plaintiff has 'no standing to challenge foreclosure based on a loan's having been securitized.'") (quoting *Niranjan v. Bank of America, N.A.*, No. C 12-05706, 2013 WL 1701602, at *2 (N.D. Cal. April 18, 2013)); *McGough v. Wells Fargo Bank, N.A.*, No. C12-0050, 2012 WL 2277931, at *4 (N.D. Cal. June 18, 2012) ("Theories that securitization undermines the lender's ability have been rejected by the courts."); *Wadhwa v. Aurora Loan Servs., LLC*, No. S-11-1784, 2011 WL 2681483, at *4 (E.D. Cal. July 8, 2011) (noting that "this position has been rejected by numerous courts"); *Flores v. GMAC Mortg., LLC*, No. C 12-794, 2013 WL 2049388, at *2 (N.D. Cal. May 14, 2013) ("[plaintiff contends that] because MIT securitized the note, this allegedly stripped MERS of any ability to assign the deed of trust. Courts have consistently rejected this theory."); *Lane v. Vitek Real Estate Indus. Group*, 713 F.Supp.2d 1092, 1099 (E.D. Cal. 2010) ("The argument that parties lose their interest in a loan when it is assigned to a trust pool has also

been rejected by many district courts."). Accordingly, the Court need not address the question of whether Plaintiff's loan was securitized – a fact disputed by the parties – because even if it was, "the securitization of plaintiff's promissory note did not deprive defendants of the power to foreclose on the property." *Dagres v. Countrywide Bank, N.A.*, No. 2:14-cv-01339, 2014 WL 3417848, at *3 (C.D. Cal. 2014).[4]

In addition, Plaintiff's wrongful foreclosure claim fails for other reasons. Under California law, in order to maintain a wrongful foreclosure claim, "Plaintiffs must allege that (1) Defendants caused an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a power of sale in a mortgage or deed of trust; (2) Plaintiffs suffered prejudice or harm; and (3) Plaintiffs tendered the amount of the secured indebtedness or were excused from tendering." *Nugent v. Fed. Home Loan Mortgage Corp.*, No. 2:12-cv-00091, 2013 WL 1326425, at *7 (E.D. Cal. Mar. 29, 2013). "California courts have determined [that] plaintiffs are unable to show prejudice when the borrowers were in default and the allegedly improper assignment does not

---

[4] To the extent Plaintiff is alleging *improper* securitization because the Pooling and Servicing Agreement ("PSA") governing the alleged securitized trust was violated, he lacks standing to bring such a claim under California law. *See Maynard v. Wells Fargo Bank, N.A.*, No. 12cv1435, 2013 WL 4883202, at *10 (S.D. Cal. Sept. 11, 2013) ("To the extent Plaintiffs challenge the validity of the securitization of the Loan because Wells Fargo and U.S. Bank failed to comply with the terms of the PSA or the Trust Agreement, Plaintiffs are not investors of the Loan, nor are Plaintiffs parties to the PSA or Trust Agreement. Therefore, as many courts have already held, Plaintiffs lack standing to challenge the validity of the securitization of the Loan."). Apparently in opposition to this argument, Plaintiff cites to *Glaski v. Bank of America, N.A.*, 160 Cal. Rptr. 3d 449, 451 (Cal. Ct. App. 2013), which held that borrowers "have standing to challenge void assignments of their loans." *See* Pl.'s Addendum Resp. at 7. However, this position was rejected by another California Court of Appeal in *Jenkins v. JP Morgan Chase Bank, N.A.*, 156 Cal. Rptr. 3d 912, 927 (Cal. Ct. App. 2013) ("As an unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note, Jenkins lacks standing to enforce any agreements, including the investment trust's pooling and servicing agreement, relating to such transactions."). "District courts in the Ninth Circuit have generally rejected *Glaski*, and sided with *Jenkins*, noting *Glaski* is a minority view." *Lanini v. JP Morgan Chase Bank, N.A.*, No. 2:13-cv-00027, 2014 WL 1347365, at *5 (E.D. Cal. Apr. 4, 2014). *See also McNeil v. Wells Fargo Bank, N.A.*, No. 13-5519, 2014 WL 2967629, at *3 (N.D. Cal. July 1, 2014).

affect the borrower's ability to pay . . . ." *Lazo v. Summit Management Co.*, No. 1:13-cv-02015, 2014 WL 3362289, at *10 (E.D. Cal. July 9, 2014).  *See also Fontenot v. Wells Fargo Bank, N.A.*, 129 Cal. Rptr. 3d 467, 481 (Cal. Ct. App. 2011) (finding no prejudice where borrower was in default and did not allege that transfer of note interfered with borrower's ability to pay).  On this point, then-Chief Judge Anthony Ishii of the United States District Court for the Eastern District of California noted:

> Regardless of alleged irregularities, Plaintiff remained obligated under the deed of trust to faithfully make the required payments.  Plaintiff does not contend that he was not actually in default under the deed of trust.  Plaintiff's property would therefore be subject to foreclosure even under an unimpeachable creditor, and any alleged irregularities in the proceedings caused by Defendants have not made Plaintiff worse off than he would have been in the absence of any problem.

*Garcia v. Federal Home Loan Mortgage Corp.*, No. 1:12-cv-00397, 2012 WL 3756307, at *5 (E.D. Cal. 2012).  Here, there is no question that Plaintiff is in default on his loan.  *See* Wells Fargo MTD, Ex. F; Pl.'s Suppl. Resp. at 13-14 ("The Plaintiff's only remedy against the alleged lender and Defendant Wells Fargo was to withhold payments"); Pl.'s Proposed Am. at 2 ("The Plaintiff used the only mechanism available to him and that was to withhold payments").  Rather, he devotes his Complaint and subsequent filings to the argument that Wells Fargo is an improper party to foreclose on him because his loan has been securitized.  Yet, even if such securitization occurred, Plaintiff alleges no prejudice from foreclosure by an allegedly improper party, and therefore his wrongful foreclosure claim goes nowhere.  *See Siliga v. Mortg. Elec. Registration Sys., Inc.*, 161 Cal. Rptr. 3d 500, 508 (Cal. Ct. App. 2013) ("Absent any prejudice, the Siligas have no standing to complain about any alleged lack of authority or defective assignment.").

At multiple points in his filings, Plaintiff asserts that in order to foreclose, Defendant must demonstrate its legal possession of the note (as well as physical possession of the original copy of the note).  *See, e.g.,* Pl.'s Suppl. Resp. ("put[ting]" Wells Fargo "to strict proof" "to

come forward to portray and demonstrate the Original 'wet ink' MORTGAGE and the Original 'wet ink' NOTE to the Honorable Court."); Pl.'s Inj. Mot. at 6 (mentioning Defendant's "inability to produce the necessary Securitized NOTE which the law requires them to have BEFORE they can seek any legal remedy from the Court.").  However, no such requirement exists in California law.  "California appellate courts have consistently rejected the theory that California's nonjudicial foreclosure scheme (Cal. Civ. Code §§ 2924-2924k) requires a foreclosing party to have a beneficial interest in or physical possession of the note." *McNeil*, 2014 WL 2967629, at *3.  *See also Jenkins*, 156 Cal. Rptr. 3d at 925 ("the foreclosing beneficiary-creditor need not produce the promissory note or otherwise prove it holds the note to nonjudicially foreclose on a real property security."); *Garcia*,  2012 WL 3756307, at *4 ("the California nonjudicial foreclosure process does not require physical possession of the note by the party initiating foreclosure."); *Jahaveri v. JP Morgan Chase Bank, N.A.*, No. CV10-08185, 2011 WL 1131518, at *2 (C.D. Cal. Mar. 24, 2011) (nothing in [California Civil Code § 2924] requires the entity initiating foreclosure to have physical possession of the note.  Indeed, courts have uniformly found that 'physical possession of the original promissory note is not a pre-requisite to initiating foreclosure proceedings.'") (quoting *Nguyen v. Lasalle Bank Nat'l Ass'n*, No. SACV 09-0881, 2009 WL 3297269, at *3 (C.D. Cal. Oct. 13, 2009)); *Heald v. Nat'l City Mortg.*, No. 11CV904, 2011 WL 5513226, at *5 (S.D. Cal. Nov. 10, 2011) ("to the extent that Plaintiff's wrongful foreclosure claim is based on the fact that Defendants do not possess the 'genuine original' promissory note, allonge, or deed of trust it necessarily fails as well. California does not require possession of the original note before initiating a foreclosure.") (internal citation omitted).  Accordingly,  in dismissing Plaintiff's claim, the Court need not

determine whether Wells Fargo is actually in possession of the original promissory note (or the deed of trust), as such possession is not a prerequisite to non-judicial foreclosure in California.

Similarly, in arguing that Wells Fargo may not pursue non-judicial foreclosure proceedings against him, Plaintiff repeatedly invokes various provisions of the Uniform Commercial Code and the California Commercial Code, arguing that Wells Fargo has violated their requirements. *See, e.g.,* Compl. at 9, 11, 13, 17, 18, 27, 32, 33, 35, 44, 49; Pl.'s Suppl. Resp. at 2, 12. However, these provisions are inapposite here. As California courts have held, the UCC does not apply to California's non-judicial foreclosure proceedings. *See Rieger v. Wells Fargo Bank, N.A.*, No. 3:13-0749, 2013 WL 1748045, at *7 (N.D. Cal. Apr. 23, 2013) ("California Civil Code section 2924, not the UCC, governs nonjudicial foreclosures."). Similarly, the California Commercial Code is not applicable to non-judicial foreclosure proceedings. *See Garcia*, 2012 WL 3756307, at *4 ("The California Commercial Code does not apply to real property and thus is not applicable here."); *Coavilla v. Wells Fargo Bank, N.A.*, No. 13-cv-1003, 2013 WL 2153855, at *3-4 (N.D. Cal. May 16, 2013) (dismissing claims alleging that defendant lacked standing to foreclose based on violations of the California Commercial Code because, *inter alia*, "California's nonjudicial foreclosure statutes . . . exclusively govern nonjudicial foreclosures.") (internal citations omitted).

Accordingly, in light of the supplemental briefing received in response to the Court's prior Memorandum Opinion and Orders, the Court rejects Plaintiff's claim that Wells Fargo lacks standing to foreclose on his property.

### 2. Fair Debt Collection Practices Act

By its previous Memorandum Opinion and Order, the Court held in abeyance Plaintiff's claim that Wells Fargo had violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et*

*seq.*, as this claim appeared related to Plaintiff's securitization argument, which would be addressed in the parties' supplemental briefing. However, upon further review of the filings in this case and the case law interpreting the FDCPA, the Court concludes that Plaintiff's FDCPA claim is subject to dismissal, regardless of Plaintiff's securitization argument. Courts have held that the FDCPA is inapplicable to California's non-judicial foreclosure proceedings, which Wells Fargo has utilized here. *See, e.g., Casas v. Wells Fargo Bank, N.A.*, No. 5:12-CV-01742, 2012 WL 5877641, at *4 (N.D. Cal. Nov. 20, 2012) ("courts in this circuit have concluded that a non judicial foreclosure does not constitute a 'debt collection' under the FDCPA."); *Lazo*, 2014 WL 3362289, at *16 ("the FDCPA does not apply to actions taken in nonjudicial foreclosures."); *Reyes-Aguilar v. Bank of America, N.A.*, No. 13-cv-05764, 2014 WL 2153792, at *14 (N.D. Cal. Mar. 20, 2014) ("the Court agrees with other courts in this Circuit which have held that nonjudicial foreclosure is generally not 'debt collection.'"); *Usher v. Chase Home Finance, LLC*, No. S-10-2202, 2010 WL 4008496, at *4 (E.D. Cal. Oct. 12, 2010) ("Foreclosure on a property based on a deed of trust does not constitute collection of a debt within the meaning of the FDCPA."); *Hanaway v. JP Morgan Chase Bank*, No. SACV 10-1809, 2011 WL 672559, at *4 (C.D. Cal. Feb. 15, 2011) ("Since a transfer in interest is the aim of a foreclosure, and not a collection of debt, the foreclosure proceeding is not a debt collection action under FDCPA."). Accordingly, because Plaintiff here challenges Defendant's actions as part of California's non-judicial foreclosure proceedings, his FDCPA claim is dismissed.

### 3. Fraud

Plaintiff's fraud claim is similarly subject to dismissal. Plaintiff claims that Wells Fargo has committed fraud by improperly foreclosing on his mortgage. *See* Compl. at 32 ("The overt act of fraud occurred when the Assignment of Mortgage was recorded and subsequently when

the Defendants started the foreclosure action to sell and to subsequently evict the Plaintiff from his home. . . . These fraudulent acts were designed to mislead us into believing that WELLS FARGO BANK, N.A. has an enforceable interest in the note and mortgage, which they clearly do not.").  In its prior Memorandum Opinion, the Court recognized that Plaintiff premised his claim of fraud on Wells Fargo's allegedly illegitimate foreclosure, and concluded that to the extent this foreclosure was within Wells Fargo's rights as owner of Plaintiff's mortgage, there would be no fraud, and this claim would be subject to dismissal.  *See* Mem. Op., ECF No. [45] at 23-24.  Accordingly, the Court held this claim in abeyance in order to allow for supplemental briefing from the parties.  However, upon further review of the parties' filings, the Court concludes that Plaintiff's fraud claim must be dismissed regardless of Plaintiff's securitization argument because Plaintiff has failed to allege or set out any actions taken in reliance on the allegedly false statements made by Wells Fargo.

In analyzing Plaintiff's fraud claim, the Court applies California law.  "In a diversity action, a federal district court applies the choice of law principles of the state or jurisdiction where it sits."  *Lopez v. Council on American-Islamic Relations Action Network, Inc.*, 741 F.Supp.2d 222, 234 (D.D.C. 2010).  "The District of Columbia employs a 'modified governmental interest analysis,' under which the court evaluates the governmental policies underlying the applicable laws and determines which jurisdiction's policy would be most advanced by having its laws applied to the facts in the case."  *Id.* at 234-35 (citation omitted).  "For a tort claim, the state whose policy would be advanced the most is the state with the most significant relationship to the case."  *Id.* at 235.  "The Court considers the place where the injury occurred, the place where the conduct causing the injury occurred, the residence, domicile, place of incorporation or place of business of the parties, and the place where the parties' relationship,

if any, is centered." *Id.* Here, all of these factors support application of California law, and the parties do not argue that any other law should apply.

Under California law, a plaintiff must allege the following to support a claim of fraud: "a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996). Although Plaintiff's securitization argument goes to the "false representation" prong of this analysis, Plaintiff's claim nevertheless fails because he has not alleged any actions taken in reliance on the allegedly false statement by Wells Fargo that it owns his mortgage. Rather, from the outset of this litigation, and apparently from the initiation of the foreclosure proceedings against him by Wells Fargo, Plaintiff has vigorously contested Wells Fargo's representations, arguing that Wells Fargo does not own his mortgage and lacks the power to foreclose on his home. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Here, Plaintiff states with particularity the alleged fraudulent statement of Wells Fargo, but his Complaint and subsequent filings fail to specifically identify any actions he has taken in reliance on this statement and the resulting damage from this reliance. Accordingly, the Court concludes that Plaintiff has not met his burden of establishing a claim of fraud.

### 4. Intentional Infliction of Emotional Distress

Plaintiff's claim for intentional infliction of emotional distress ("IIED") similarly fails. In its prior Memorandum Opinion, the Court concluded that, Plaintiff's Complaint, read liberally, does raise a claim for IIED. Although Plaintiff's Complaint asserts no free-standing claim for IIED, he titles his Second Cause of Action "Violation of the Plaintiffs Rights to Due Process of law and Intentional infliction of emotional distress." Compl. at 37. While much of the ensuing discussion focuses on Plaintiff's Due Process claim, Plaintiff does allege that

"Defendants intentionally inflicted emotional distress knowing that they and their client and co-conspirator does not have standing to foreclose on said property and knowing the loss of a persons home is one of the most traumatic things that anyone can experience." *Id.* at 37-38. Plaintiff later states that "Defendants have intentionally inflicted emotional distress, knowing that they do not have lawful claim to the subject property . . . ." *Id.* at 46.

As with Plaintiff's fraud claim, the Court applies California law. *See Lopez*, 741 F.Supp.2d at 235 (""The Court considers the place where the injury occurred, the place where the conduct causing the injury occurred, the residence, domicile, place of incorporation or place of business of the parties, and the place where the parties' relationship, if any, is centered."). "The elements of the tort of intentional infliction of emotional distress are: '(1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Odinma v. Aurora Loan Svcs.*, No. C-09-4674, 2010 WL 1199886, at *9 (N.D. Cal. Mar. 23, 2010) (quoting *Trice v. Blue Cross of Cal.*, 257 Cal. Rptr. 338, 340 (Cal. Ct. App. 1989)). "Outrageous conduct must 'be so extreme as to exceed all bounds of that usually tolerated in a civilized society.'" *Id.* (quoting *Trice*, 257 Cal. Rptr. at 340).

California courts have uniformly rejected IIED claims related to foreclosure actions, including allegedly wrongful foreclosure. *See, e.g.*, *Baidoobonso-Iam v. Bank of America*, No. CV 10-9171, 2011 WL 5870065, at *5 (C.D. Cal. Nov. 22, 2011) ("to the extent that Collier's claim is solely predicated on the foreclosure of his property, California courts have held that such conduct does not state a claim for intentional infliction of emotional distress."); *Smith v.*

*Wachovia*, No. C 09-01300, 2009 WL 1948829, at *4 (N.D. Cal. July 6, 2009) (allegations that defendant "wrongfully and intentionally initiated non-judicial foreclosure proceedings" were "not so extreme as to exceed the bounds of civilized society"); *Davenport v. Litton Loan Servicing, LP*, 725 F.Supp.2d 862, 884 (N.D. Cal. 2010) (holding that the act of foreclosing on a home "falls shy of 'outrageous,' however wrenching the effects on the borrower."). Plaintiff provides no response to Defendant's argument on this point and therefore his IIED claim is dismissed.

### 5. Plaintiff's Potential RESPA Claim

At various points, Plaintiff's Complaint also mentions Wells Fargo's failure to respond to his Qualified Written Responses ("QWR"), apparently in violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.* *See* Compl. at 2, 17. RESPA provides plaintiffs with a private right of action for "the failure by a loan servicer to give proper notice of a transfer of servicing rights or to respond to a qualified written request for information about a loan." *Choudhuri v. Wells Fargo Bank, N.A.*, No. C 11-00518, 2011 WL 5079480, at *8 (N.D. Cal. Oct. 25, 2011) (citing 12 U.S.C. § 2605(f)). Although Plaintiff attaches his QWRs as an exhibit to his Complaint, *see* Compl., Ex. A (Qualified Written Requests), neither Wells Fargo nor the Court, in its previous Memorandum Opinion, understood him to be raising a claim under RESPA for failure to respond to QWR. Rather, Plaintiff appears to contend that Wells Fargo's alleged failure to respond to his QWRs precipitated his lawsuit, as this alleged non-responsiveness suggested to him that Wells Fargo was a stranger to his loan. *See* Compl. at 2 ("The failure to answer the Qualified Written Requests . . . makes it a mystery as to who is the actual note-holder and thus, who is the real party-in-interest."). However, a fair reading of the Complaint did not suggest that Plaintiff was asserting a free-standing claim under RESPA.

Nevertheless, out of an abundance of caution, the Court notes that Plaintiff's potential RESPA claim – even if actually and properly alleged – also fails because, most obviously, he has not shown actual damages. Although "[a]ctual damages are available to compensate individual claims under RESPA," *Reyes-Aguilar v. Bank of America, N.A.*, No. 13-cv-5764, 2014 WL 2917049, at *17 (N.D. Cal. June 24, 2014), "[a]lleging a breach of RESPA duties alone is not enough. A plaintiff must, at a minimum, allege that the breach resulted in actual damages." *Banh v. Aurora Loan Servs., LLC*, No. CV 11-06365, 2012 WL 2202982, at *3 (N.D. Cal. June 14, 2012) (citations omitted). "[U]ncertainty and impending harm, as opposed to actual harm, is insufficient to state a claim for damages under RESPA." *Id.*

Here, the only actual damages Plaintiff appears to allege were caused by Wells Fargo's alleged failure to respond to his QWRs are his decision to file this lawsuit because of uncertainty regarding which entities held his loan, and the mental anguish associated with foreclosure. Other courts have found such allegations insufficient to show actual damages under RESPA. *See, e.g., Rothman v. U.S. Bank Nat'l Assn.*, No. C 13-3381, 2014 WL 1648619, at *7 n. 9 (N.D. Cal. Apr. 24, 2014) ("'[S]imply having to file suit,' however, 'does not suffice as a harm warranting actual damages' under RESPA) (quoting *Hensley v. Bank of New York Mellon*, No. 1:10-CV-1316, 2011 WL 4084253, at *4 (E.D. Cal. Sept. 13, 2011)). Similarly, in *Reyes-Aguilar*, the court found that the plaintiffs "[did] not make plausible allegations of damages as a result of Defendant's failure to respond" to their QWRs, as plaintiffs only "vaguely allege[d] that the lack of response resulted in uncertainty regarding which entities held their loan, damage to their reputation and credit, monetary damages, the impending foreclosure of their home, mental anguish, worries that they [would] lose their home, and late fees." 2014 WL 2917049, at *12. "While claims of harm to credit and monetary damages can constitute plausible allegations of

actual damages under RESPA, Plaintiffs fail to present facts to infer that they actually suffered such damages as a result of Defendants' actions." *Id.* So too here, Plaintiff fails to provide any allegation of harm to credit. In addition, the only monetary damages for which he provides factual support are the costs associated with filing this litigation. *See* Pl.'s Inj. Mot. at 5 (noting, as the basis for a claim of irreparable injury, that "the cost of defending against and prosecution of the true issues of Plaintiff's case has caused and cost Plaintiff thousands of dollars for research, legal counsel, filing fees, copying, postage, courier services, process serving, gasoline, wear and tear on his vehicle and hundreds upon hundreds of hour [sic] of labor in addition to the emotional stress caused."). Accordingly, Plaintiff has failed to show the actual damages caused by Defendant's alleged failure to respond to his QWRs that are necessary for a RESPA claim. *Cf. Hutchins v. Bank of America, N.A.*, No. 13-cv-03242, 2014 WL 722098, at *9 (N.D. Cal. Feb. 25, 2014) (concluding that plaintiff sufficiently pled "actual damages" under RESPA where reports submitted by a mortgage servicer resulted in the lowering of plaintiff's credit score, which contributed to her job loss).[5]

### B. Plaintiff's Motion to Amend

On July 21, 2014, Plaintiff filed a motion for leave to amend his Complaint. Pl.'s Mot. to Am. For the reasons discussed below, Plaintiff's proposed amendments are futile and his motion is denied.[6]

---

[5] Although this discussion only focuses on Plaintiff's failure to show "actual damages" under RESPA, the Court notes that there may be other flaws in Plaintiff's RESPA claim not explored here.

[6] The Court notes that Plaintiff's separate motion for injunctive relief, in discussing why the proposed injunction would be in the public interest, references the California Homeowners Bill of Rights. Plaintiff does not mention this statute anywhere else in his filings, nor does he clearly allege a violation of its provisions in arguing that the injunction would be in the public interest. *See* Pl.'s Inj. Mot. at 8 ("Additionally, the California Homeowners Bill of Rights (CHBOR) which became effective January 1, 2013 is a law passed in California passed in the

As an initial matter, Plaintiff's proposed Amended Complaint reasserts his claim against Defendant Wells Fargo for violation of the consent decree in *United States v. Bank of America Corp., et al.*, No. 12-0361 (D.D.C. Apr. 4, 2012), ECF No. 14 (Consent Judgment). Pl.'s Proposed Am. at 3-5. By its prior Memorandum Opinion and Order, the Court dismissed this claim because the Consent Judgment is not enforceable by individual third parties. *See* Order, ECF No. [44] at 1; Mem. Op., ECF No. [45] at 20-22. The Consent Judgment specifically states that enforcement actions may be brought by a "Party to this Consent Judgment or the Monitoring Committee." *United States v. Bank of America Corp., et al.*, No. 12-0361 (D.D.C. Apr. 4, 2012), ECF No. 14, Ex. E (Enforcement Terms) at E-15. Plaintiff, as an individual mortgagee, is neither party to the Consent Judgment nor a member of the monitoring committee. *See also McCain v. Bank of America*, No. 13-cv-1418, 2014 WL 334196, at *7 (D.D.C. Jan. 30, 2014) ("The plaintiff was not a party to this consent judgment, and therefore, is unable to enforce any obligation imposed upon the parties to the judgment."); *Glaviano v. J.P. Morgan Chase Bank, N.A.*, No. 13-cv-2049, 2013 WL 6823122, at *1 n. 1 (D.D.C. Dec. 27, 2013) ("Plaintiffs also erroneously claim that the foreclosure sale of their property is prohibited by the Consent Orders issued in *United States v. Bank of America* . . . . Plaintiffs were not parties in *United States v. Bank of America*, which dealt with mortgage servicing, origination, and certification in general and did not involve Plaintiffs' mortgage or any other particular mortgage."); *Ghaffari v. Wells*

---

Public Interest."); *id.* at 9 ("This Plaintiff therefore, respectfully submits that this injunction is in the public's interest, as it enforces the recently executed Consent Orders and CHBOHR which are all designed to protect the public."). This claim, if actually asserted, is not properly before the Court. Even given his *pro se* status, Plaintiff may not amend his Complaint through off-hand mentions in filings far removed from his original Complaint. *Cf. Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F.Supp.2d 165, 170 (D.D.C. 2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quotation marks omitted). Plaintiff has shown that he knows how to request leave to amend his complaint and thus the Court does not view the passing reference to the CHBOR in his motion for injunctive relief as an additional request for relief.

*Fargo Bank, N.A.*, No. 13-115, 2013 WL 6070364, at *4 (D.D.C. Nov. 19, 2013) ("claims by individual borrowers, such as Plaintiff, are excluded from the Consent Judgment").

Plaintiff's proposed Amended Complaint also seeks to enforce a Consent Order agreed to by Wells Fargo and the Office of the Comptroller of the Currency ("OCC") in April 2011. Pl.'s Proposed Am. at 5-9. However, this claim fails for the same reasons as Plaintiff's attempt to enforce the consent decree in *United States v. Bank of America Corp., et al.* The 2011 Consent Order includes the following language: "Nothing in the Stipulation and Consent or this Order, express or implied, shall give to any person or entity, other than the parties hereto, and their successors hereunder, any benefit or any legal or equitable right, remedy or claim under the Stipulation and Consent or this Order." Consent Order, Wells Fargo Bank, N.A., AA-EC-11-19 (Office of the Comptroller of the Currency Apr. 13, 2011) at 27, *available at* http://occ.gov/news-issuances/news-releases/2011/nr-occ-2011-47k.pdf. Reviewing this language and identical language in other OCC consent orders, other courts have concluded that homeowners lack the ability to sue for enforcement of such consent orders. *See, e.g., Onyszcsak v. Wells Fargo Bank, N.A.*, No. 13-12166, 2013 WL 6038863, at *5 (E.D. Mich. Nov. 14, 2013) ("The Court finds that this language clearly establishes Plaintiffs have no right to enforce the Consent Order against Defendant."); *Green v. Bank of America Corp.*, 530 Fed. Appx. 426, 430 (6th Cir. 2013) ("As an initial matter, Plaintiff has no right to enforce the terms and conditions of the OCC Consent Orders. Each specifically provides, 'Nothing in the Stipulation and Consent or this Order, express or implied, shall give to any person or entity, other than the parties hereto . . . any benefit or any legal or equitable right, remedy, or claim under the Stipulation and Consent or this Order.'"). Plaintiff also points to amendments to the OCC Consent Order that occurred in 2013, which he says "provided for cash payments for homeowners that had been violated by the

bank's unsafe and unsound business practices." Pl.'s Proposed Am. at 5-9. But the amended consent order contains the exact same language quoted above precluding private enforcement. *See* Amendment to April 13, 2011 Consent Order, Wells Fargo Bank, N.A., AA-EC-11-19 (Office of the Comptroller of the Currency Feb. 28, 2013) at 13, *available at* http://www.occ.gov/static/enforcement-actions/ea2013-132.pdf ("Nothing in the Stipulation or this Amendment to the Consent Order, express or implied, shall give to any person or entity, other than the parties hereto, and their successors hereunder, any benefit or any legal or equitable right, remedy or claim under the Stipulation or this Amendment to the Consent Order."). Accordingly, Plaintiff's proposed amendment, adding claims related to the OCC Consent Order, is rejected as futile. *See also SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 158 (D.C. Cir. 1998) ("this circuit has opted for a bright line rule . . . that third parties to government consent decrees cannot enforce those decrees absent an explicit stipulation by the government to that effect.") (internal citation omitted).

Plaintiff next appears to allege breach of contract, arguing that a provision of his Note has been violated. Pl.'s Proposed Am. at 9-11. The relevant provision, entitled "Notice of Default", states, "If I am in default, the Lender may send me a written notice, called "Notice of Default,' telling me that If I do not pay the overdue amount by a certain date, the Lender may require me to pay Immediately the amount of Principal which has not been paid and all other Interest that I owe on that amount, plus any other amounts due under the Security Instrument." *Id.* at 10. Plaintiff alleges that he has never received a written "Notice of Default" and thus appears to contend that Defendant Wells Fargo is in breach of contract. *Id.* Putting aside for the moment whether this contention undercuts Plaintiff's previously consistent argument that Wells Fargo is *not* his lender, this proposed breach of contract claim fails for the simple reason that the cited

language imposes no mandatory obligation.  The contract states only that "the Lender *may* send [Plaintiff] a written notice" and under ordinary principles of contract interpretation, use of the word "may" does not impose a mandatory obligation.  *See Bennett v. Panama Canal Co.*, 475 F.2d 1280, 1282 (D.C. Cir. 1973) ("Ordinarily 'may' is a permissive not a mandatory term."); *PCH Mut. Ins. Co., Inc. v. Casualty & Surety, Inc.*, 750 F.Supp.2d 125, 144 (D.D.C. 2010) (noting that "as a general matter of contract law, the word 'may' is viewed as a permissive, rather than mandatory, term, particularly when used in contraposition to the word 'shall' "); *Kucera v. Lizza*, 9 Cal. App. 4th 1141, 1152 (Cal. Ct. App. 1997) ("The words 'may' and 'should' are ordinarily permissive").  Accordingly, to the extent Plaintiff attempts to assert a new claim for breach of contract, this claim is rejected as futile.

The remainder of Plaintiff's proposed Amended Complaint reiterates his allegations that Wells Fargo lacks standing to foreclose on his mortgage, which he again argues has been securitized.  Pl.'s Proposed Am. at 11-22.  In support of this claim, he invokes various provisions of the Uniform Commercial Code and the California Commercial Code.  *Id.*  As discussed, *supra* Section III.A.1, the Court rejects Plaintiff's claim that Wells Fargo is wrongfully foreclosing on his home.  In addition, Plaintiff's alleged violations of the UCC and the California Commercial Code are not applicable to Defendant's non-judicial foreclosure action.  *See Rieger*, 2013 WL 1748045, at *7   ("California Civil Code section 2924, not the UCC, governs nonjudicial foreclosures."); *Payadachi v. IndyMac Bank*, No. C 09-5545, 2010 WL 4367221, at *3 (N.D. Cal. Oct. 28, 2010) ("The comprehensive statutory framework established [by the California Civil Code] to govern nonjudicial foreclosure sales is intended to be exclusive.") (citation omitted).

Accordingly, because Plaintiff's proposed Amended Complaint reiterates claims already rejected by this Court or raises futile new claims, the motion is denied.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the portion of Defendant Wells Fargo Bank, N.A.'s [6] Motion to Dismiss Pursuant to Rule 12(b)(2), 12(b)(5) and 12(b)(6) or, in the Alternative, for Summary Judgment Pursuant to Rule 12(d) held in abeyance by this Court's prior Memorandum Opinion. In addition, Plaintiff's [59] Motion for Leave to File Plaintiff's Amendment to Plaintiff's Original Complaint is DENIED. All other pending motions in this case are DENIED AS MOOT. Accordingly, this action is DISMISSED in its entirety. An appropriate Order accompanies this Memorandum Opinion.


Dated: July 25, 2014


                                      _____/s/_____
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge